701 A.2d 448

ROSENSHEIN ASSOCIATES, PALISADES PARK SQUARE CORPO-
RATION AND ROSENSHEIN FIRST DEVELOPMENT CORP.,
PLAINTIFFS–RESPONDENTS, v. BOROUGH OF PALISADES
PARK, DEFENDANT–APPELLANT, AND MAYOR AND COUN-
CIL OF THE BOROUGH OF PALISADES PARK, PLANNING
BOARD OF THE BOROUGH OF PALISADES PARK AND ZON-
ING BOARD OF THE BOROUGH OF PALISADES PARK, DE-
FENDANTS, AND DAVID H. BEREZIN, AMELIA BENEDUCI,
DOMINIC PICINICH AND GORDANA PICINICH, INTERVE-
NORS/CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 9, 1997—Decided September 26, 1997.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Joseph J. Rotolo* argued the cause for appellant.

*Frederick L. Bernstein* argued the cause for intervenor/cross-appellant.

*Christine Gillen* argued the cause for respondent (*Diktas Gillen*, attorneys; *Ms. Gillen*, on the brief).

The opinion of the court was delivered by

CARCHMAN, J.S.C. (Temporarily Assigned).

Defendant Borough of Palisades Park (Borough) and intervenors David H. Berezin, Amelia Beneduci, Dominic Picinich and Gordana Picinich (intervenors) appeal from a judgment of the Law Division granting to plaintiffs, Rosenshein Associates, Palisades Park Square Corporation and Rosenshein First Development Corp. (plaintiffs) relief a) declaring the Borough's land use ordinances unconstitutional; b) mandating a review of the ordinances to comply with *Southern Burlington County N.A.A.C.P. v. Mount Laurel Township,* 92 *N.J.* 158, 456 *A.*2d 390 (1983) (*Mt. Laurel II* ); and c) granting a builder's remedy. The trial court determined that such relief was necessary to meet the constitutional mandate of *Mt. Laurel.* We affirm.

The subject property consists of thirteen separate lots totalling 16.46 acres on a tract known as the "Long Swamp." Approximately 6.5 acres are upland or buildable property and the remain-

der are wetlands and not buildable. Significantly, this property represents the last remaining vacant land available for development in the Borough.

This action was commenced in 1990. In September, 1990, Judge Murphy granted the intervenors leave to intervene. In 1991, the trial judge granted plaintiffs' motion for partial summary judgment and determined that the Borough's ordinances failed to provide a realistic opportunity for the construction of low and moderate income housing. The trial commenced in 1995. After hearing from conflicting experts presented by both sides, the trial judge first determined the Borough's fair share requirement and, thereafter, considered the suitability of the property for housing. Finally, the judge awarded a builder's remedy to plaintiffs.

In 1990, the Borough's fair share requirement under *Mount Laurel II* was determined by the Council on Affordable Housing (COAH) to be 222 units. In 1994, during the pendency of this action, COAH revised the fair share allocation and reduced the Borough's obligation to 28 units which was further reduced by the trial judge to 23 units resulting from a rehabilitation credit for five units.

The court-appointed master, Philip Caton, a professional planner who has served as a court-appointed master in numerous *Mt. Laurel* cases, opined that the property was suitable for residential development and ultimately recommended that plaintiffs' proposal of two eight-story residential apartment structures consisting of 140 units in one building and 64 units in the other was a reasonable development of the property and consistent with Borough development. Caton noted, and the trial judge found, that the proposed development would satisfy the Borough's *Mt. Laurel* obligation in full. The trial judge adopted the recommendations of the master and awarded a builder's remedy consistent with those recommendations including granting to the Borough the option of having the affordable units set aside as part of the proposed development or receiving a cash contribution of $10,000 per affordable unit to be used for rehabilitation of existing housing units.

During the course of this litigation, plaintiffs' financial condition was raised as an issue. The record demonstrates that plaintiffs suffered from financial difficulties resulting in the filing of Chapter 11 proceedings in the United States Bankruptcy Court. Among plaintiffs' outstanding obligations are payment of municipal property taxes. While disputing a significant increase in the assessment of their property from $791,400 to $7,230,600 over a two-year period, plaintiffs have failed to pay property taxes. At the time of trial, plaintiffs' property tax obligation to the Borough exceeded 1.3 million dollars. Plaintiffs challenged the tax assessments, and that issue is now being adjudicated in an adversary proceeding pending in the Bankruptcy Court.

On appeal, the Borough raises the following legal arguments:

I— THE BUILDER'S REMEDY SHOULD BE RECONSIDERED BASED ON RESPONDENTS' FINANCIAL INABILITY TO PROVIDE A REALISTIC OPPORTUNITY FOR THE CONSTRUCTION OF THE BOROUGH'S FAIR SHARE OF LOW AND MODERATE INCOME HOUSING.

II— THE TRIAL COURT ERRED IN AWARDING RESPONDENTS THE BUILDER'S REMEDY.

   A. THE ENVIRONMENTAL CONCERNS ON THE SUBJECT PROPERTY PRECLUDE THE AWARD OF THE BUILDER'S REMEDY.

   B. THE GRANT OF THE BUILDER'S REMEDY SHOULD BE OVERTURNED BECAUSE OF THE SUBSTANTIAL PLANNING CONCERNS REGARDING THE PROPOSED SITE.

The intervenors raise similar legal arguments:

I— THE GRANT OF A BUILDER'S REMEDY IN THIS CASE AMOUNTED TO AN UNCONSTITUTIONAL TAX ABATEMENT IN VIOLATION OF INTERVENORS' AND OTHER BOROUGH TAXPAYERS' RIGHTS TO EQUAL TREATMENT AND EQUAL PROTECTION OF THE LAWS UNDER THE FOURTEENTH AMENDMENT.

II— BUILDER'S REMEDIES UNDER *MOUNT LAUREL II* WERE INTENDED TO PROVIDE "A REALISTIC OPPORTUNITY" FOR LOWER INCOME HOUSING TO BE BUILT BY REASONABLE BUILDERS, NOT TO INCREASE THE VALUE OF VACANT LANDS OWNED BY BANKRUPT CORPORATIONS.

III— PLAINTIFFS' LONG SWAMP LOTS CONSTITUTE A WETLANDS AND A NATURAL RESOURCE THAT IS [sic] NOT SUITABLE FOR THE CONSTRUCTION OF HIGH–RISE APARTMENTS.

We have carefully scrutinized the record and conclude that Judge Murphy's findings and rationale are supported by the

evidence. We conclude that the Borough's and intervenors' contentions are without merit, *R.* 2:11–3(e)(1)(A) *and* (E), but both parties raise an additional issue which warrants further comment.

Both the Borough and the intervenors argue that the financial ability of the developer to develop the property is a factor to be considered by the court and, further, the court must determine whether there is a "realistic opportunity" that the project will be completed by this developer. Referring to the financial difficulties of plaintiffs and the Chapter 11 filing, the Borough and intervenors suggest that these plaintiffs do not possess the financial wherewithal to complete this project, and accordingly, the trial court should deny plaintiffs a builder's remedy.

*In Mt. Laurel II,* the Court stated: "Every municipality's land use regulations should provide a *realistic opportunity* for decent housing...." *Mt. Laurel II, supra,* 92 *N.J.* at 214, 456 *A.*2d 390 (emphasis added). This standard has been applied consistently in *Mt. Laurel* litigation. *See, e.g., Toll Brothers, Inc. v. Township of West Windsor,* 303 *N.J.Super.* 518, 540, 697 *A.*2d 201 (Law Div.1996) (the municipality has an affirmative duty to create a realistic opportunity for low income housing to be built); *Allan–Deane Corp. v. Bedminster Township,* 205 *N.J.Super.* 87, 113, 500 *A.*2d 49 (Law Div.1985) ("[R]ealistic is defined by the court in terms of 'likelihood'."). The proofs to establish "likelihood" include verification that ordinances are free from excessive restrictions and exactions or unnecessary cost-generating devices, as well as an examination of municipal sites and mechanisms proposed by the municipality to achieve compliance. *Ibid.*

The responsibility to provide a "realistic opportunity" for affordable housing is an obligation imposed on the municipality. The inquiry by a trial court in a *Mt. Laurel* case requires examination and evaluation of the subject property, its suitability for development, the fair share obligation of the municipality, environmental concerns, the municipality's zoning and planning

ordinances and, ultimately, whether the *municipality* has complied with its constitutional obligations under *Mt. Laurel II*. The inquiry is not reciprocal. Nowhere in a *Mt. Laurel* proceeding is there the necessity to make an inquiry into the financial wherewithal of the applicant. To allow such an inquiry, as urged by the Borough and intervenors here, would shift the focus to collateral matters and away from the critical issues involved. Whether *these* plaintiffs will be able to bring the proposed development to fruition is besides the point. Whether a municipality has in place a zoning and planning scheme designed to exclude low and moderate income housing and whether the exclusionary scheme fails to provide a realistic opportunity for construction of such housing are the critical issues to be determined by the trial judge.

The ultimate ability of the developer to bring the project to fruition is a concern left to another day. As all parties conceded at oral argument, if a particular developer is unable to perform, the developer may assign its rights to a credit-worthy developer who can perform. Credit worthiness of a developer and financial safeguards to protect the interests of the governing body such as payment of taxes, *see N.J.S.A.* 40:55D–39e, may be relevant inquires during the ultimate municipal approval process but, in the context of a *Mt. Laurel* action, such considerations are, at best, premature and irrelevant. At worst, injection of the issue simply provides another opportunity to delay compliance with *Mt. Laurel* requirements.

Judge Murphy properly dealt with and resolved the issues before him; therefore, we affirm substantially for the reasons set forth by Judge Murphy in his written opinion of August 4, 1995.

Affirmed.