703 A.2d 323

NEW JERSEY BUILDERS ASSOCIATION, APPELLANT, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ROBERT C. SHINN, JR., COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 5, 1997—Decided December 10, 1997.

94

Dreier, P.J.A.D., filed a concurring opinion.

Before Judges DREIER, KEEFE and PAUL G. LEVY.

*Stephen M. Eisdorfer* argued the cause for appellant (*Hill Wallack,* attorneys; *Donna M. Jennings* and *Mr. Eisdorfer,* of counsel and on the brief).

*Cari J. Wild,* Deputy Attorney General argued the cause for respondents (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Wild,* on the brief).

*Robert J. Del Tufo* argued the cause for amicus curiae New Jersey Future (*Skadden, Arps, Slate, Meagher & Flom,* attorneys; *Mr. Del Tufo,* of counsel and on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

New Jersey Builders Association (Builders Association) challenges Administrative Order 1996–06, issued by the Commissioner of the Department of Environmental Protection (DEP) on July 29, 1996. The order, which was later published in the *New Jersey Register,* directed the DEP staff to apply departmental policies and regulations in a manner "consistent and compatible with" the State Development and Redevelopment Plan (State Plan).[1] The Builders Association contends the administrative order is invalid because it is the equivalent of an administrative rule but was not formally enacted as such under the Administrative Procedures Act (APA). Additionally, the Builders Association claims the State Plan is being inappropriately used as a basis for granting or denying particular applications to the DEP for permits or approv-

---

[1] The current version of the State Plan was finally approved on June 12, 1992. It appears as a publication of the New Jersey State Planning Commission of that date entitled "Communities of Place." The Plan was not published in either the New *Jersey Register* or the *New Jersey Administrative Code.*

als. New Jersey Future [2] participated in the appeal as an amicus curiae, urging us to affirm the administrative order.

We view the administrative order as an intra-agency communication directing the DEP staff to use the State Plan as an aid to interpret DEP functions authorized by the Legislature. The administrative order, therefore, is not a rule, but merely a statement directing consideration of the State Plan during the anticipated rulemaking process. Further, the claim that the Plan is being inappropriately used in certain specific cases is not ripe for our consideration. Accordingly, we affirm the order and reject the challenges by the Builders Association.

The Plan is a product of the State Planning Act, *N.J.S.A.* 52:18A–196 to –207. The act establishes the State Planning Commission as the body charged with preparing and revising the State Plan. *N.J.S.A.* 52:18A–197 to –199. The Commission has the power to adopt rules and regulations. *N.J.S.A.* 52:18A–203. The aim of the State Plan is to "provide a coordinated, integrated and comprehensive plan for the growth, development, renewal and conservation of the State and its regions and which shall identify areas for growth, agriculture, open space conservation and other appropriate designations." *N.J.S.A.* 52:18A–199a. It must take into account other state, county, and municipal land use and other development plans, and must "[c]oordinate planning activities and establish Statewide planning objectives" in enumerated areas of development. *N.J.S.A.* 52:18A–200c, 200f.

The Plan is intended "to serve as a useful guide to officials in both the public and private sectors in making planning and investment decisions." *N.J.A.C.* 17:32–6.1(a). But it has no "regulatory" effect:

> Neither the State Development and Redevelopment Plan nor its Resource Planning and Management Map is regulatory and neither should be referenced or applied in

---

[2] New Jersey Future is a non-profit, non-partisan organization founded for the specific purpose of advancing the public interest with regard to issues affecting the State Plan.

such a manner. It is not the purpose of this process to either "validate" or "invalidate" a specific code, ordinance, administrative rule, regulation or other instrument of plan implementation.

*[N.J.A.C. 17:32–6.1(b).]*

With respect to the goal of consistency among plans, another regulation provides:

> (a) The State Planning Act recommends but does not require that municipal and county plans be consistent with the State Development and Redevelopment Plan. During the cross-acceptance process, however, many government officials and citizens expressed concern, given the complexity of public plans and processes in general and of the State Plan in particular, about how agencies at each level of government would know whether their plans are consistent with the State Plan. It is the intention of the State Planning Commission, through the Office of State Planning, to assist all levels of government in achieving the highest possible degree of consistency with the State Plan. To that end, this subchapter outlines a voluntary review process which will analyze local, county, regional and State agency plans and provide findings and recommendations regarding the subject plan's incorporation of the various provisions of the State Plan.

*[N.J.A.C. 17:32–7.1(a).]*

Moreover, "[n]o municipal, county, regional or State agency should delay any decision making process due to a pending review of their plans by the Office of State Planning for consistency with the SDRP." *N.J.A.C.* 17:32–7.1(c). Further, the Plan acknowledges:

> [It is to] be used only to guide municipal and county master planning, State agency functional planning and infrastructure investment decisions. It is not appropriate to use the State Plan directly to formulate codes, ordinances, administrative rules or other "regulations." Such regulations should be formulated to carry out the master and functional plans of the responsible agencies.

Local governments "are encouraged to review their plans with the goal to bring them into 'consistency' with" the Plan. The Plan is not intended to "interfere with the prerogatives of governments and agencies in carrying out their responsibilities."

The State Plan is not designed to prescribe or proscribe specific local action; rather, it provides "the ends to which governments at all levels should aspire in their planning and decision-making." As characterized by its own language:

> The State Plan is different from functional State agency plans and municipal and county master plans. The State Plan is not a regulation but a policy guide for State, regional and local agencies to use when they exercise their delegated authority. *For example, the State Plan does not automatically change the criteria*

*for the issuance of a State permit, but it does contemplate that the agency responsible for issuing permits should review its plans and regulations in light of the State Plan and make appropriate modifications* to reflect the Goals, Strategies, Policies and Objectives of the Plan, if such modifications are within the scope of the agency's authority. If the necessary modifications would exceed the agency's authority, it should seek to obtain the authority through normal legislative or rule-making processes. Similarly, when county and municipal master plans are updated, they should be modified to reflect the provisions of the State Plan. In these ways, the intent of the State Planning Act is achieved through existing implementation processes.

[Emphasis added]

As perceived by the State Plan, the State Planning Act "does not alter or limit" the power of New Jersey's municipalities over "planning for and regulating the use of land." What the act does do is "coordinate planning at all levels of government and to encourage the development of local plans that are consistent with State plans and programs."

The Plan specifies that it will not directly affect individual private interests. "Rather, the application of the Plan to individual private interests will take place through the exercise of existing public powers at local, regional and State levels." As the Plan is not a regulatory measure, it "should not be applied to the future use or intensity of use of specific parcels of land."

In an August 1993 Memorandum of Understanding between DEP and the State Planning Commission, DEP pledged to cooperate with the Commission in implementing the State Plan in enumerated ways, including the coordination of its "planning, monitoring, investment and regulatory activities" to achieve the Plan's purposes. Thereafter, Governor Florio directed all state departments to adopt policies consistent with the goals of the State Plan and to cooperate with the Commission and Office of State Planning in monitoring the effectiveness of the Plan. *Executive Order* No. 114 (1994).

The Builders Association wrote to DEP expressing concern over the impact of the Memorandum of Understanding and Executive Order No. 114. In a letter of July 24, 1994, an assistant commissioner responded in part as follows:

With regard to your first concern that DEP staff may deem any application for modifications in any existing Wastewater Management Plan as "inconsistent" with the State Development and Redevelopment Plan, *I can assure you that individual applications before this agency will not be judged on the basis of their consistency with the State Plan.* To do so would violate not only the terms of this department's MOU with the State Planning Commission but the spirit of the State Planning Act, which states clearly that the State Plan is to be used to provide policy guidance, not as a regulatory document.

To that end, the DEP has been reviewing pertinent functional plans, including wastewater management plans, with the eventual goal of making these plans compatible with the policies and goals of the State Plan. Departmental decision-making on regulatory matters and funding priorities may ultimately evolve from these updated functional plans and/or rulemakings made pursuant to the New Jersey Administrative Code. *The department has taken pains, however, not to require plan consistency as a decisionmaking criterion in site-specific plan amendment and/or permit actions. We intend to continue this policy.*

[Emphasis added.]

In November 1995, Governor Whitman directed each cabinet officer to submit a report detailing his or her department's efforts to incorporate the State Plan into its own operations. In response to Governor Whitman's directive, DEP issued the administrative order at issue in this appeal in July 1996. In pertinent part, the administrative order provides:

that the Assistant Commissioners, in exercising their official duties and responsibilities, take those necessary steps to insure that all policies and regulations, which guide and regulate their respective programs to the extent permitted by law, are applied to be made consistent and compatible with the New Jersey State Plan.

Following issuance of the order, the Builders Association wrote a series of letters to DEP expressing its concerns. In response, Commissioner Shinn explained the purpose of the administrative order, in a December 1996 letter, as follows:

My Administrative Order #6 served to reinforce the Governor's directive to promote plan implementation by all State agencies. The Administrative Order did not signal a substantive change in the deliberate systematic process first outlined in the April, 1992 white paper [the Status Report described above] but rather expresses the priority with which I accord the Governor's directive.

The Commissioner also described DEP's current efforts:

Currently the Department is examining possible ways to further incorporate the State Plan policies into our programs. For example, we are working on revisions to the Water Quality Management Planning Program, both in terms of periodic updating as part of regulatory reform and also as a way to facilitate implementation of the State Plan. As part of that process the Department has established a

Wastewater Advisory Committee, which has representation from the New Jersey Builders Association. *It is precisely through this open and public process that we intend to formulate rules which will, in part, achieve the broad based goals of the State Plan.*

[Emphasis added.]

In March 1997, the State Planning Commission adopted a "Resolution" expressing its approval of the order as being an appropriate measure to foster the goals of the State Plan.[3]

*I.*

First, we reject the Builders Association's contention that the administrative order is the functional equivalent of an administrative rule as defined in the APA, and thus that it was subject to the notice and hearing requirements of that act. We agree with the DEP that the order is an "intra-agency statement," which is not subject to the formal rule-making process.

The governing provision of the APA is *N.J.S.A.* 52:14B–2(e):

(e) "Administrative rule" or "rule," when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of any rule, but *does not include:* (1) statements concerning the internal management or discipline of any agency; (2) *intraagency and interagency statements;* and (3) agency decisions and findings in contested cases.

[Emphasis added.]

This administrative order should not be assessed under the six-part criteria of *Metromedia, Inc. v. Director Div. of Taxation,* 97 *N.J.* 313, 478 *A.*2d 742 (1984). Instead, we are guided by *Woodland Private Study Group v. State,* 109 *N.J.* 62, 533 *A.*2d 387 (1987), because the intra-agency exception "implicates other considerations not expressly addressed in *Metromedia." Id.* at 69, 533 *A.*2d 387. Thus, even if an administrative order satisfies all the *Metromedia* criteria, it need not go through the rule-making process if it qualifies as an intra-agency statement. *Ibid.*

---

[3] In the resolution the Commission acknowledged the filing of the present appeal.

Noting that the APA does not define "intra-agency statement," the Court looked to treatment of cognate laws in other jurisdictions, concluding that the purpose of intra-agency statements is to facilitate communication within an agency, and to avoid a significant burden on the rights of persons regulated by that agency. *Id.* at 69–75, 533 *A.*2d 387. Thus, the Court defined "intra-agency statement as (1) a communication between agency members that (2) does not have a substantial impact on (3) the rights or legitimate interests of the regulated public." *Id.* at 75, 533 *A.*2d 387. The Court cautioned that "some impact" on the regulated public is not fatal to the intra-agency exception, in that "[e]ven the most narrowly drawn organizational internal memo has, in a literal sense, some impact on the regulated public." *Id.* at 73–74, 533 *A.*2d 387. Rather, the impact must be "substantial." *Id.* at 74, 533 *A.*2d 387. And, even if the impact is substantial, the affected interests must be "sufficiently important or worthy of recognition." *Ibid.*

*Woodland* has been applied in several situations, with results dependent on the underlying facts. *See Scott v. State*, 265 *N.J.Super.* 591, 628 *A.*2d 379 (App.Div.1993)(agency brochure promising to cover certain property damages caused by foster children not an intra-agency statement but a "quasi-legislative initiative" to be treated as a rule under *Metromedia* ); *Academy Bus Tours v. New Jersey Transit*, 263 *N.J.Super.* 353, 622 *A.*2d 1335 (App.Div.), *certif. denied*, 134 *N.J.* 485, 634 *A.*2d 531 (1993)(written policy allowing outside carriers to bid on bus routes not an exempted intra-agency statement but a rule establishing policy applicable to an industry); *Citizens For Equity v. Dept. Env. Prot.*, 126 *N.J.* 391, 599 *A.*2d 507 (1991), *aff'g* 252 *N.J.Super.* 62, 599 *A.*2d 516 (App.Div.1990)(suspension of processing of claims from residents living near landfills pending DEP's promulgation of new claims regulations held an intra-agency statement); *Matter of Sheriff's Officer*, 226 *N.J.Super.* 17, 543 *A.*2d 462 (App.Div.1988) (reclassifying positions of sheriff's officer and sheriff's officer sergeant in order to correspond to the civil service designation held an intra-agency statement); *State v. Laurence*, 259 *N.J.Super.* 225, 611

*A*.2d 1164 (Law Div.1992) (consent form and procedures used by law enforcement agency not tantamount to a rule governed by *Metromedia* but an intra-agency statement exempt from the APA).

█ The lesson of *Woodland* and its progeny is that an agency order will be deemed an exempt intra-agency statement to the extent (1) it is intended to govern the conduct of agency employees, as opposed to members of the regulated public; (2) any impact on the regulated public is incidental or unsubstantial; and (3) that impact is on interests or rights that do not rise to a level needing the protection afforded by the APA rule-making procedures.

In this case, the order is directed to DEP's assistant commissioners, not to any member of the public. It charges them with performing their official duties in such a way as to secure the aims of the State Plan "to the extent permitted by law." It addresses assistant commissioners' application of DEP's own "policies and regulations"; it does not purport to restrict the conduct of developers themselves, nor to impose specific conditions on developers' applications for permits and approvals. Indeed, the State Planning Act and the State Plan reach only to the level of local government general planning, stating that local plans should be consistent with the State Plan. Hence, in affirming DEP's commitment to the State Plan, the order does no more than declare DEP's intention to encourage local plans to be consistent with the State Plan, a declaration that probably was not even necessary, given that, as a state agency, DEP was bound by the act to aid in implementing it. *N.J.S.A.* 52:18A–196e.

Hence the order does not purport to constrain local authorities in resolving particular land-use applications. Those matters are to be decided, as they have traditionally, under existing state laws (such as the Municipal Land Use Law) and local ordinances. The members of the Builders Association, therefore, do not need the protection that the APA rulemaking process would provide. The order merely acknowledges the State Planning Act and State

Plan, which themselves have no independent regulatory effect or decisive impact on particular applications. Both the regulation and State Plan expressly so acknowledge. *N.J.A.C.* 17:32–6.1(b), 17:32–7.1(c).

## *II.*

The second contention raised by the Builders Association, that pursuant to the administrative order the DEP is using the State Plan as a dispositive basis for specific applications, is not supported by the record. Included in the reply brief are references to letters from the DEP staff to the Somerset County Planning Board, the Borough of Washington and Morris Township. Each directed the local governing bodies to evaluate their wastewater management plans for consistency with the State Plan, but none purported to direct resolution of specific permit requests by private developers or contractors. Thus the letters do not tend to establish the kind of "substantial impact" on members of the regulated public envisioned by *Woodland Private Study Group v. State, supra,* 109 *N.J.* at 66–69, 533 *A.2d* 387. These letters, and a reply they elicited from the DEP, are not part of the record, and we will not take judicial notice of them as inappropriately requested by the Builders Association. Moreover, they lead only to a semantic battle between the appellant and the respondent, and they do not demonstrate that the administrative order under review has adversely affected members of the Builders Association. It is clear that the Builders Association has expressed concerns that are premature, because any particular application for review or permitting by the DEP can be challenged, on its merits, in the usual way. Anecdotal claims that are not part of the record on appeal cannot support a challenge to the administrative order "as applied."

We conclude that the administrative order does not mandate compliance with the State Plan by rule or regulation. Rather, it declares the intra-agency policy that DEP, in performing its own duties, is to act in conformity with the State Plan when otherwise

authorized. We were informed at oral argument that the DEP is preparing proposed rules and regulations regarding issues mentioned by the Builders Association, including the Water Quality Management Planning Program. Undoubtedly those proposals will be subjected to public comment and scrutiny, pursuant to the APA. The administrative order does not purport to constrain the conduct of other entities, and it does not set any criteria for deciding specific permit applications.

The action of the DEP in issuing Administrative Order 1996–06 is affirmed.

DREIER, P.J.A.D. (concurring).

While I concur with the majority's conclusion that the order appealed from does not on its face violate the State Planning Act with its precatory language concerning compliance, I take issue with the majority's view that the order, as applied, does not have a substantial regulatory effect. The inclusion in the order of the term "to the extent permitted by law" saves the order as merely an intra-agency statement. Yet I see in three instances of application of the statement presented to us that the agency has viewed the statement as an authorization to impose substantial requirements on counties and municipalities which would not be there in the absence of the order.

The Department noted in a letter to the Borough of Washington, that upon the adoption of regulations, but without new statutory authority, municipalities will be required to demonstrate by clear and convincing evidence why areawide water quality management plans are not conforming to the State Plan. Even before the new regulations were promulgated, the Township was required to give "justification for noncompliance." On a more immediate note, the Somerset County Planning Board had to assess its Waste Water Management Plan for compliance with the State Plan and was *required* to justify any noncompliance with the State Plan. Similarly, Morris Township was directed to perform a like evaluation, although a later letter explained that the "evaluation is voluntary," and not required.

As soon as the State requires this type of information, the municipalities will turn to the potential developers to fill this void. This will increase costs and will engender delay while a planner provides a line-by-line comparison of the proposed development with the State Plan. The municipality's own planner then must do the same thing to check on the applicant's presentation, all so that DEP can be shown that the State Plan in fact was considered and every deviation has been explained. What had been an advisory plan to provide guidelines, to be accepted or rejected by each county and municipality, thus becomes a stricture binding the locality's actions, unless it can prove specifically why each element has been rejected.

If we are to have state planning rather than local planning, let the Legislature say so, and let the political process proceed in due course. *See N.J. Const.* art. IV, § 6, ¶ 2. The Legislature, however, has never imposed state or regional planning except in certain defined areas, such as utilities, waste management, or some areas of water policy. However, the Commissioner's order in this case, as it is being implemented, appears to be the first trickle of a river that can wash away the concept of home rule in the area of planning and zoning.

I would not be filing this concurrence if the Commissioner had stated that the requirements noted in all of the letters to the municipalities (rather than just one) were in error or were mistakes made by lower-level regulators, and that the intention was not, as expressed in its letters, to require justification for departures from the State Plan.

The examples I have cited may have constituted the totality of the State's incursion into the control of local planning, and perhaps there will be no requirement that the State Plan be a required consideration, increasing the costs of both developers and municipalities or counties. It may be that this is not the first step in a concerted plan, the proverbial camel's nose under the tent of local planning. I would be more sanguine were it not for the similarity of the intentions expressed in the letters to Borough of Washington, Morris Township and Somerset County.

At this stage of the implementation of the State Plan, I cannot discern the direction of future state action with sufficient certainty so that I could vote to overturn an intra-agency order that by its terms recognizes the limitations of existing law. Were I to have seen a present burden being placed upon additional developers or local governments, or any indication that the failure to follow the comparisons apparently required by the letters quoted earlier would result in the rejections of applications, this concurring opinion would have been a dissent. *See Woodland Private Study Group v. State Dept. of Envtl. Protection,* 109 *N.J.* 62, 73–74, 533 *A.*2d 387 (1987). Possibly the majority also would then have questioned the authority of the State administrators to have exceeded their statutory authorization. I hope that I am wrong in my prediction of State policy, and I am willing to give DEP the benefit of the doubt and wait and see whether the Commissioner controls the implementation of his intra-agency order so that unauthorized onerous burdens are not placed upon local planning and development.

I therefore concur in the result reached by the majority in this case.