772 A.2d 9 (2001)
339 N.J. Super. 371
In re Matter of the ADOPTION OF AMENDMENTS TO N.J.A.C. 5:93-1.3 and 5:93-5.3 by the New Jersey Council on Affordable Housing.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 2001.
Decided April 10, 2001.
*11 John M. Payne for appellants Affordable Housing Network of New Jersey, Association of New Jersey Environmental Commissions and New Jersey Future, Inc. (Rutgers Environmental Law Clinic, attorneys; Susan J. Kraham, Edward Lloyd, Newark, and Mr. Payne, on the brief).
William P. Malloy, Deputy Attorney General, for respondent Council on Affordable Housing (John J. Farmer, Jr., Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Mr. Malloy, on the brief).
Before Judges NEWMAN, BRAITHWAITE and WELLS.
*10 The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Appellants, three housing, planning and environmental advocacy organizations, Affordable Housing Network of New Jersey, Association of New Jersey Environmental Commissions and New Jersey Future, Inc., assert a facial challenge to the constitutionality of amendments to regulations promulgated by respondent, Council on Affordable Housing ("COAH"), the administrative agency created and authorized under the Fair Housing Act, N.J.S.A. 52:27D-301 to -329 ("FHA"), to ensure that municipalities meet their obligation to provide a fair share of their region's need for low and moderate income housing. Hills Dev. Co. v. Bernards Township in Somerset County, 103 N.J. 1, 19-20, 510 A.2d 621 (1986). Appellants argue that the COAH amendments to N.J.A.C. 5:93-1.3 and 5:93-5.3(b) violate the "realistic opportunity" Mount Laurel[1] standard by allowing COAH to certify a fair share housing plan for sites that do not have in place plans for sewer infrastructure that have been approved by the Department of Environmental Protection ("DEP").
*12 We reject appellants' contentions and affirm the validity of the amended regulations because appellants have not sustained their burden of proving that the regulations are unreasonable or that the language of the regulations is unconstitutionally vague.

I
On August 18, 1997, COAH published proposed amendments to N.J.A.C. 5:91 and 5:93. 29 N.J. Reg. 3665(a) (August 18, 1997). Appellants, along with four other organizations and one individual, filed comments with COAH on September 17, 1997, in which they objected to the changes to N.J.A.C. 5:93-5.3(b). Those proposed rule changes were not adopted.
On October 19, 1998, COAH published proposed amendments to N.J.A.C. 5:91-7.4 and 5:93-1.3, 4.2, 5.1, 5.2, 5.3, and 6.5. On November 18, 1998, appellants, along with the Upper Raritan Watershed Association, filed comments with COAH, in which they objected to the changes in N.J.A.C. 5:93-1.3 (definition of "developable site") and N.J.A.C. 5:93-5.3(b) (new construction site criteria) for reasons similar to those stated in their 1997 comments. On that same day appellants' attorneys submitted another set of comments on behalf of all of the same parties except for the Affordable Housing Network.
On April 5, 1999, COAH adopted the amendments to N.J.A.C. 5:91-7.4 and N.J.A.C. 5:93-1.3, 4.2, 5.1, 5.2, 5.3, and 6.5 (unchanged from the proposed amendments) and published its summary of the public comments to the proposed changes and the agency's responses. 31 N.J. Reg. 868(a) (April 5, 1999). On May 20, 1999, appellants filed a notice of appeal from COAH's adoption of the amendments to N.J.A.C. 5:93-1.3 and 5:93-5.3(b).
The FHA requires that COAH adopt criteria and guidelines for the municipal determination of its present and prospective fair share of affordable housing need. N.J.S.A. 52:27D-307. COAH enacted the substantive rules in N.J.A.C. 5:93, effective June 6, 1994, and amended them on September 5, 1995, December 6, 1995, May 20, 1996, and January 5, 1998. 30 N.J. Reg. 3719(a) (October 19, 1998).

II
Before the 1999 amendments were adopted, N.J.A.C. 5:93-1.3 had defined "developable site" to mean:
a site that has access to appropriate water and sewer infrastructure, and has received water consistency approvals from the DEP or its designated agent authorized by law to issue such approvals.
[30 N.J. Reg. 3719(a) (October 19, 1998).]
The 1999 amendment, challenged here by appellants, changed the second part of the definition:
"Developable site" means a site that has access to appropriate water and sewer infrastructure, and is consistent with the applicable areawide water quality management plan (including the wastewater management plan) or is included in an amendment to the areawide water quality management plan submitted to and under review by DEP.

[30 N.J. Reg. 3719(a) (Oct. 19, 1998); 31 N.J. Reg. 868(a) (April 5, 1999) (emphasis added).]
Before the 1999 amendment was adopted, N.J.A.C. 5:93-5.3(b) had provided:
Municipalities shall designate sites that are available, suitable, developable and approvable, as defined in N.J.A.C. 5:93-1. In reviewing sites, the Council shall give priority to sites where infrastructure *13 is available. All sites designated for low and moderate income housing shall receive approval for consistency review, as set forth in Section 208 of the Clean Water Act, 33 U.S.C. 1251 et seq., prior to substantive certification. Where a site is denied consistency review, the municipality shall apply for an amendment to its Section 208 plan to incorporate the denied site.
[30 N.J. Reg. 3719(a) (Oct. 19, 1998).]
The 1999 amendment added the qualifying words "currently or imminently" to modify "available" infrastructure in the second sentence, which discusses which sites will be given priority; made some technical changes in the third sentence; and added a new substantive provision regarding COAH's obligation to "revisit" a site if the DEP denied approval or made no determination at the end of two years. The provision as amended, now challenged by appellants, reads:
Municipalities shall designate sites that are available, suitable, developable and approvable, as defined in N.J.A.C. 5:93-1. In reviewing sites, the Council shall give priority to sites where infrastructure is currently or imminently available. All sites designated for low and moderate income housing shall be consistent with the applicable areawide water quality management plan (including the wastewater management plan) or be included in an amendment application filed prior to the grant of final substantive certification. If there is a denial by DEP or at the end of two years if there is no DEP determination, then COAH shall revisit the site and housing plan to determine if it provides a realistic opportunity.

[30 N.J. Reg. 3719(a) (Oct. 19, 1998); 31 N.J. Reg. 868 (April 5, 1999) (emphasis added).]
Appellants' comments on the proposed amendments made the same objections as those presented in this appeal, the chief of which is that the amendments invite municipal delay in complying with fair share obligations by allowing substantive certification of a municipal housing element that relies on inclusionary development sites lacking DEP-approved access to sewer infrastructure, with review of the situation only after two years.
COAH responded to virtually all of the objections raised by appellants in their comments. In response to the comment that "[s]ubstantive certification without a DEP-approved wastewater management plan fails to ensure that the Mount Laurel `realistic opportunity' standard" will be met, COAH said:
This rule is intended to achieve the goal of providing a realistic opportunity for affordable housing. All proposed sites in a housing element must either be in an approved water quality management plan or have such an amendment filed with DEP prior to the Council's granting final substantive certification. The municipality must, of course, endorse and support the amendment filed with DEP.
[31 N.J. Reg. 868(a) (April 5, 1999).]
In response to the comment that "[s]ites without infrastructure cannot expeditiously deliver affordable housing," COAH offered the underlying reason for the sewer changesto give municipalities more flexibility in developing a housing element:
The FHA requires that a realistic plan be achievable within six years. While sites with all approvals in place are most desirable, not all municipalities have such sites at the time of petition. This rule provides a degree of flexibility for municipalities, while still assuring that the FHA's "realistic opportunity" standard is met.

*14 [Ibid.]
Responding to the comment that the proposed amendments "encourage municipal delay in complying with fair share housing obligations and weaken implementation of the [State Development and Redevelopment Plan (`SDRP') ]", COAH disagreed, and said:
The proposed amendments neither encourage municipal delay nor weakens [sic] the SDRP. Having a site either in an approved DEP plan or already included in a DEP amendment moves an affordable housing plan to implementation. The Council has always been consistent with the policies of the SDRP and will only certify a site if it is consistent with the SDRP or has received a waiver from the Office of State Planning (OSP) in accordance with standards set out in the Memorandum of Understanding dated October 27, 1992, between the Council and the State Planning Commission. In addition, the proposed amendment was prepared jointly by members of the Council and the State Planning Commission.
[Ibid.]
In response to the comment that COAH "is proposing to abandon its current requirement that inclusionary development sites have prior DEP approval for sewer service," COAH referred to its prior custom in interpreting the rule:
The present rule does not require prior DEP approval as the commenter states. The rule has always permitted an amendment to be filed with DEP prior to COAH action. The current wording of N.J.A.C. 5:93-5.3(b) states: "Where a site is denied consistency review, the municipality shall apply for an amendment to its Section 208 plans to incorporate the denied site." The Council has consistently interpreted this rule as allowing inclusionary sites to be included in a certified plan without prior DEP approval of sewer service, subject to a condition of certification that the municipality files the amendments with DEP. The only difference between the current rule and the rule as proposed for amendment is the inclusion of the terminology utilized by DEP today. As a result, the terms "201 and 208" plans have been replaced by the term "areawide water quality management plan."
[Ibid.]
Responding to the comment that the proposed amendment "would establish an unconstitutional `good faith' standard for evaluating municipal compliance with Mount Laurel and the Fair Housing Act," COAH again disagreed, saying:
[T]he Council's proposed amendment does not alter the intent and practice of the rule currently in place. Moreover, the requirement of a municipal filing of an amendment with the DEP is an affirmative action on the part of a municipality to move an affordable housing plan forward. The proposed amendment also sets a time limit for the Council to act and deletes outdated terminology and replaces it with the correct language.
[Ibid.]
In response to the comment that "[r]evisiting the site if DEP denies sewer approvals or makes no decision on such approvals within two years is a vague and undefined process," COAH said that the proposed amendment was an improvement over the one then in place:
The present rule offers no time line for the Council to revisit a site if DEP has not acted. The proposed amendment strengthens the Council's review for the provision of affordable housing and gives the municipality a timeline for moving forward or reconsidering its plan. As stated above, to insure the developability *15 of the site, the Council will require, as a condition of substantive certification, a semi-annual report from the municipality that will include the status of the DEP review. The report will be formally presented to the Council at a regularly scheduled monthly meeting so that the Council may be fully informed as to the status of the DEP review. If necessary, the Council will contact the DEP with regard to the progress of the review.
[Ibid.]
Another comment faulted the proposal's vagueness as to "the consequences of two years of inaction" and recommended that "[i]f a site does not create a realistic opportunity, then the Council should revoke certification". COAH believed that such a response was too harsh:
The Council believes that an automatic revoking of substantive certification is unduly punitive. The Council will review each municipality on a case-by-case basis to determine the appropriate action if the DEP amendment is not approved within two years. Council action could be a requirement that the municipality amend its certified housing element within a limited time period, if DEP's failure to amend was not the fault of the municipality. Alternatively, the revoking of substantive certification could occur if a municipality has not supported or has obstructed the amendment.
[Ibid.]
Responding to the comment that the "proposed phrase `imminently' is unconstitutionally vague," COAH explained:
"Imminently" has been included to make clear that infrastructure need not be in place at the time of Council review but can be anticipated shortly based on the time of need for that particular infrastructure. For example, if it is needed in six months, then "imminently" means six months. If it is needed in a year, "imminently" means within a year. This provision adds flexibility to the process and COAH believes it is most reasonable.
[Ibid.]
Finally, in response to the comment that COAH "should support affirmatively" the SDRP and "give priority to sites where infrastructure is available," COAH agreed, adding:
The Council supports the SDRP and the Council's rules urge municipalities to give priority to sites where infrastructure is available. The Council only will certify a plan that is consistent with the SDRP or has received a waiver of consistency from OSP.
[Ibid.]
Appellants contend that the amended regulations permitting COAH to grant certification to fair share plans without sewer access institutionalize a two-year period of delay while municipalities await sewer infrastructure approval, and thus they violate the constitutional "realistic opportunity" standard. They further assert that regulations also undermine that standard by giving priority to sites where infrastructure is "currently or imminently" available because "imminently" is a term so vague as to be void of meaning.
Appellants, however, offer an example of how the regulations can be amended so as to uphold the constitutional requirement: COAH should permit certification to plans with inclusionary sites without existing sewer approval only if no other sites meeting COAH criteria are within existing sewer service area. According to appellants, allowing inclusionary sites to be located in areas without existing sewer service is inconsistent with the SDRP, which encourages development where it already exists *16 (metropolitan and suburban areas) rather than in rural and environmentally sensitive areas, where it does not. Appellants urge us not to show deference to COAH on this matter due to the constitutional considerations.
COAH responds that the intent of the rule changes was to update the references to DEP procedures and to clarify an ambiguity in the earlier rules: the old definition of "developable" required a site to have received DEP consistency approval, but N.J.A.C. 5:93-5.3(b) considered an inclusionary site to provide a realistic opportunity if it was denied consistency review but the municipality applied for an amendment to its Section 208 plan. The new rules require an inclusionary site to either be consistent with the applicable water quality management ("WQM") plan or be included in an amendment to a WQM plan that has been submitted to the DEP.
According to COAH, the procedures and timeliness in the amended rules ensure that an inclusionary site creates a realistic opportunity for affordable housing: the sites that are included in an amended WQM plan at the time of certification will be revisited when DEP denies the amendment or at the end of two years if DEP has not acted on the application. Further, COAH will require a semi-annual report from a municipality about the status of the DEP review as a condition of certification.
COAH asserts that no Mount Laurel case has ever held that only sites with approved sewer infrastructure can satisfy the realistic opportunity standard. COAH contends that the amended rules, which are but one piece in a complex regulatory scheme, are a reasonable exercise of its authority, which is the appropriate standard of review. COAH argues that appellants' example of how to amend the regulations to uphold their constitutionality is an implicit acknowledgment that certification may be given to sites without sewer approval and thus undermines their facial constitutional challenge. We agree with COAH.
As to consistency with the SDRP, COAH says it relies on the SDRP in allocating regional need, but is not required by law, statutory or otherwise, to avoid any one specific planning area in determining where inclusionary sites may be located. Again, we agree.

III
An administrative agency's decision must stand unless it is arbitrary, capricious, or unreasonable. Van Dalen v. Washington Township, 120 N.J. 234, 244-45, 576 A.2d 819 (1990); Non-Profit Affordable Hous. Network v. COAH, 265 N.J.Super. 475, 479, 627 A.2d 1153 (App. Div.1993). Administrative regulations are accorded a presumption of reasonableness and validity. Ibid.
Normally a reviewing court must consider three inquiries: (1) whether the agency action violates the enabling act's legislative policies (2) whether there is substantial evidence in the record to support the findings on which the agency based its decision; and (3) whether the agency clearly erred in applying the legislative policies to the facts. Public Serv. Elec. & Gas Co. v. Department of Envtl. Prot., 101 N.J. 95, 103, 501 A.2d 125 (1985). Here, however, where facts are not at issue, and there is a constitutional challenge, the court must focus its analysis on whether the regulations bear a reasonable relationship to the legislative goal of providing low and moderate income housing. Holmdel Builders Ass'n v. Township of Holmdel, 121 N.J. 550, 572, 583 A.2d 277 (1990). This essentially is the same standard of review applied to other agency decisions: whether the decision *17 is reasonable and is it consistent with the legislative policy.
Furthermore, when there is a facial constitutional challenge alleging vagueness in the regulation, it will be struck down "only if it is `impermissibly vague in all of its applications.'" State v. Saunders, 302 N.J.Super. 509, 520, 695 A.2d 722 (App. Div.), certif. denied, 151 N.J. 470, 700 A.2d 881 (1997) (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982)).
The FHA was the legislative response to the Supreme Court's declaration in Mount Laurel that every municipality has an obligation to create a realistic opportunity for the construction of its fair share of the regional need for low and moderate income housing. Calton Homes, Inc. v. Council on Affordable Hous., 244 N.J.Super. 438, 442, 582 A.2d 1024 (App.Div.1990), certif. denied, 127 N.J. 326, 604 A.2d 601 (1991). To implement that goal, the FHA created COAH and charged it with responsibility for determining regional needs and certifying fair share plans. N.J.S.A. 52:27D-305(a), -307, -314.
The FHA specifically refers to infrastructure (sewer and water) in only two contexts: (1) a municipality's fair share is to be adjusted whenever "[a]dequate public facilities and infrastructure capacities are not available or would result in costs prohibitive to the public if provided," N.J.S.A. 52:27D 307(c)(2)(g); and (2) in preparing its housing element, a municipality is to consider a "plan for infrastructure expansion and rehabilitation if necessary to assure the achievement of the municipality's fair share of low and moderate income housing." N.J.S.A. 52:27D-311(a)(4). Thus, the Legislature intended municipalities to expand their infrastructure if necessary in order to satisfy their fair share obligation, but it also contemplated that in some municipalities this would not be possible or economically feasible, and thus it allowed for a downward adjustment of a municipality's obligation in such cases.
The substantive rules promulgated by COAH, N.J.A.C. 5:93-1.1 to -15.1, create a complex methodology for determining present and prospective regional need, credits and adjustments, preparation of a housing element, and much more. The rules address infrastructure concerns, such as the lack of sewer access, in several sections other than the two challenged by appellants. For example, in the subchapter on credits and reductions, N.J.A.C. 5:93-3.5(a) directs COAH to review previously zoned sites to determine whether they "present a realistic opportunity for low and moderate income housing before granting a reduction." In its review, COAH is to consider "environmental factors, the location of existing infrastructure and the likelihood of the current zoning to result in the creation of low and moderate income housing during the period of substantive certification." N.J.A.C. 5:93-3.5(a).
In COAH's sub-chapter on municipal adjustments, the rules address a situation in which a community has sufficient land but insufficient water and/or sewer to support inclusionary development. N.J.A.C. 5:93-4.3(a). In such a case, COAH reviews "each possible site for inclusionary development to determine if it is realistic for the site to receive the required water and/or sewer during the period of substantive certification." N.J.A.C. 5:93-4.3(a). If it is not realistic, the municipality receives a durational adjustment of its housing obligation, deferring the obligation until adequate water and/or sewer are made available. N.J.A.C. 5:93-4.3(c). COAH requires, among other things, that municipal officials endorse all applications to the *18 DEP for water and sewer approval, and that they amend their housing element when new DEP approvals are received if the element included sites without water and sewer access. N.J.A.C. 5:93-4.3(c)(2) and (4).
Mount Laurel II, supra, 92 N.J. at 221-22, 456 A.2d 390, defined "realistic opportunity" to mean that "there is in fact a likelihoodto the extent economic conditions allowthat the lower income housing will actually be constructed." This means a realistic, not just a theoretical, opportunity for the construction of affordable housing. Alexander's Dep't Stores, Inc. v. Borough of Paramus, 125 N.J. 100, 109, 592 A.2d 1168 (1991). "The responsibility to provide a `realistic opportunity' for affordable housing is an obligation imposed on the municipality." Rosenshein Assocs. v. Borough of Palisades Park, 304 N.J.Super. 438, 443, 701 A.2d 448 (App.Div.1997), certif. denied, 156 N.J. 380, 718 A.2d 1209 (1998).
The availability of water and sewer connections is one of the factors considered in determining whether a municipality has provided a realistic opportunity for affordable housing. Mount Laurel II, 92 N.J. at 298, 456 A.2d 390 (ruling that a proposed inclusionary site on which water and sewer access would not be available for five to six years did not provide a realistic opportunity). However, the lack of access to sewer does not necessarily rule a site out. Urban League of Essex County v. Township of Mahwah, 207 N.J.Super. 169, 281, 504 A.2d 66 (Law Div.1984) ("While approval of this proposal cannot be ruled out strictly on the basis of lack of access to utilities, it is a factor to be considered.") Where sewer infrastructure is not in place, it is crucial that it can be brought to a site at a reasonable cost. Toll Bros. v. Township of West Windsor, 303 N.J.Super. 518, 543, 697 A.2d 201 (Law Div.1996), aff'd, 334 N.J.Super. 109, 756 A.2d 1074 (App.Div.2000). To that end, "[m]unicipalities have an affirmative obligation to facilitate provision of the infrastructure necessary to make development realistically likely." Ibid.
Appellants cite to a case involving the Township of Hillsborough as an example of the long delays caused when a sewer infrastructure is not in place at the time substantive certification is granted. See In re Petition for Substantive Certification of the Hous. Element and Fair Share Plan of the Township of Hillsborough, Somerset County, No. A-6668-97T1 (App. Div. April 14, 2000). We are satisfied that appellants' reliance on Hillsborough is misplaced, particularly to support a facial constitutional challenge to these amended regulations.
In 1996, COAH granted certification to Hillsborough, whose only inclusionary site was a planned adult community/health care facility, which was to include 3000 units of housing with a fifteen percent set-aside for affordable housing; 160 units were to be built within the six-year period of Hillsborough's certification. Despite an agreement between Hillsborough and the developer that included "an implied pledge of Hillsborough's active support for the extension of sewer service" to the site, Hillsborough retreated from that promise and did not take affirmative steps to include the site in the county's wastewater management plan, which was necessary to provide sewer service to the site. The developer, the Hillsborough Alliance for Adult Living, filed a builder's remedy action against Hillsborough in Superior Court, and in 1998, COAH revoked its certification of Hillsborough's fair share plan, finding that Hillsborough had failed to comply with its plan "by failing to support the extension of sewer service" to the *19 site, as well as revoking the underlying zoning.
COAH refused to retain jurisdiction of the matter while Hillsborough created a new fair share plan, which would have protected the municipality from the builder's remedy action. In providing "guidance to Hillsborough with regard to any new fair share plan for which it seeks COAH certification," COAH advised that if the plan involves new development, "the site or sites must be immediately approvable in terms of zoning and infrastructure." Hillsborough appealed from COAH's decision. In an unreported opinion, we affirmed COAH's decision. See Ibid.
In Hillsborough, the municipality agreed to facilitate the DEP application process, but it did not live up to its promise. This led COAH to rescind its grant of substantive certification, and Hillsborough was exposed to builder's remedy actions. Whether it was the lack of sewer access or the municipality's dilatory behavior that led to the delay of construction is ultimately, in our view, unimportant because a delay in the provision of affordable housing is not in itself a violation of the Mount Laurel obligation. Our Supreme Court has said that there is no "constitutional timetable implicit in that obligation." Bernards Township, supra, 103 N.J. at 40, 510 A.2d 621. Although appellants contend that the amendment in the regulations will lead to widespread delays in the construction of affordable housing, similar to that which occurred in Hillsborough, their contention is only speculation. This type of speculation is not enough to overcome the presumption of constitutionality in legislative determinations. Id. at 43, 510 A.2d 621. As we noted above, the Legislature explicitly contemplated lack of sewer access in inclusionary sites when, in N.J.S.A. 52:27D-311(a)(4), it required municipalities to plan for infrastructure expansion if necessary to achieve their fair share.
Our courts have given COAH "a reasonable degree of latitude" in implementing the FHA's legislative goals, because implementation is "necessarily an evolving process." Van Dalen, supra, 120 N.J. at 246, 576 A.2d 819. However, despite COAH's "discretion in selecting methodologies to implement" the FHA, the regulatory methods it adopts must still be "consistent with the statutory goals." In re Township of Warren, 132 N.J. 1, 28, 622 A.2d 1257 (1993). Our courts have invalidated a COAH regulation only where it has been clearly shown to be inconsistent with those goals and thus unreasonable. For example, in In re Township of Warren, the Court held that an occupancy preference for municipal residents and workers was invalid because it was inconsistent with and undermined COAH's methodology for calculating and allocating regional fair share of affordable housing. Ibid. In Calton Homes, supra, 244 N.J.Super. at 453, 582 A.2d 1024, we held that COAH's 1000-unit cap rule was unreasonable because it exacerbated disparity in the obligation imposed on various municipalities in the same region (those municipalities with an obligation much greater than 1000 units would receive a windfall). In Township of Bernards v. Department of Community Affairs, 233 N.J.Super. 1, 13, 558 A.2d 1 (App.Div.), certif. denied, 118 N.J. 194, 570 A.2d 959 (1989), we held that a rule giving credits to units built after 1980 only if their occupancy was restricted to low or moderate income households was unreasonable. We concluded it was inconsistent with a statutory provision that allowed the credit as long as the unit was originally part of a low-income housing program and because it would penalize communities that provided *20 affordable housing but did not impose such restrictions.
We have refused to invalidate COAH regulations where challengers could only speculate as to the potential ill results. For example, in Calton, supra, 244 N.J.Super. at 455, 582 A.2d 1024, we upheld a rule that allowed a municipality to include zoning for the creation of affordable accessory apartment units as part of its housing element, finding that there was nothing to support the appellant's allegation that the rule would fail to result in the creation of affordable apartments. We were persuaded that the rule had an adequate safeguard: if the projected number of apartments were not built within two years, the certified municipality had to provide an alternative method of fulfilling its obligation. Id. at 455-56, 582 A.2d 1024. We also upheld in Calton a rental bonus credit that was given even before a unit was built, holding that it was reasonable to conclude that the credit would encourage developers to construct rental housing. Id. at 458, 582 A.2d 1024. Furthermore, if the unit was not built, credit would be withdrawn and the municipality would have to take other steps to replace the lost units. Ibid. We further observed that "[a]lthough there may be delay in this process, courts should not unduly impose strict timetables upon the Council's attempts to carry out its duties." Ibid.
Here, there is nothing in the record to suggest that COAH's amended regulations on sewer access are unreasonable, only appellants' speculation that they may lead to delay. But as in Calton's determination on the rental bonus rule, the possibility of delay is in itself not enough to lead to invalidation of the regulations. N.J.A.C. 5:93-5.3(b) has a built-in safeguard, as did the accessory apartment rule in Calton. The regulation requires review of the situation if DEP approval has not been granted within two years. Even without that safeguard, the Hillsborough case, relied upon by appellants, shows that COAH will act to remedy a situation in which sewer approval is not obtained. We are satisfied that appellants have not sustained their burden of proving that the amended regulations are unreasonable and do not bear a reasonable relationship to the goal of providing low and moderate income housing. Therefore, their facial constitution claim must fail. Holmdel Builders Ass'n, supra, 121 N.J. at 572, 583 A.2d 277.
We are also satisfied that appellants' facial constitutional challenge based on vagueness also fails. The regulations are not impermissibly vague in all their applications. The challenged language here would have to be "`so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" State v. Lashinsky, 81 N.J. 1, 17, 404 A.2d 1121 (1989) (quoting Coates v. Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217 (1971)). No such claim can be made here.

IV
Appellants' contentions regarding the regulations' inconsistency with the SDRP do not strengthen their case. Under the State Planning Act, N.J.S.A. 52:18A-196 to -207 ("SPA"), which became effective in 1986, the SDRP was designated as a "tool for assessing suitable locations for infrastructure, housing, economic growth and conservation." N.J.S.A. 52:18A-196c. The SDRP replaced the State Development Guide Plan (SDGP), which the Supreme Court ordered the Mount Laurel trial court judges to rely on in Mount Laurel II, supra, 92 N.J. at 225, 456 A.2d 390. Cooperation between the State Planning Commission (SPC) and COAH is statutorily mandated. The SPA directs the *21 SPC to "facilitate cooperation among State agencies and local governments with regard to development of plans, programs and policies which affect land use, environmental, capital and economic development issues." N.J.S.A. 52:18A-199(c).
The FHA directs COAH to "give appropriate weight" to the SDRP and to make municipal adjustments if the "pattern of development is contrary to the planning designations" in the SDRP. N.J.S.A. 52:27D-307(e) and 307(c)(2)(e). COAH relies on the SDRP in determining the location and size of growth areas. N.J.A.C. 5:92-1.3. In 1992, COAH entered into a Memorandum of Understanding with the SPC, N.J.A.C. 5:93 Appendix F, in which the two agencies agreed to maintain a cooperative planning process.
Outside of this institutionalized cooperation between COAH and the SPC, the SDRP itself has no regulatory effect. New Jersey Builders Ass'n v. New Jersey Dep't of Envtl. Protection, 306 N.J.Super. 93, 96, 703 A.2d 323 (App.Div.1997). The SDRP is merely a guide to state agencies and municipal officials in order to further the goal of planning consistency and to help coordinate planning at all levels of government. Id. at 96-98, 703 A.2d 323. When COAH was still relying on the SDGP, the Supreme Court, recognizing that the SDGP had limitations, considered it appropriate for COAH's reliance on the plan to be "sufficiently flexible so as to permit the presentation of proofs demonstrating that the allocation of affordable housing on the basis of the SDGP may be flawed either statewide or in particular regions." Van Dalen, supra, 120 N.J. at 247, 576 A.2d 819.
Here, COAH's amended regulations do nothing to weaken its reliance on the SDRP or its efforts at consistency with the plan's goals. It merely gives municipalities some flexibility in applying for DEP sewer approval at the same time they submit their housing element to COAH for certification. If the DEP denies approval, the municipality will have to find an alternative way to satisfy its fair share obligation.
Affirmed.
NOTES
[1] Southern Burlington County NAACP v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713, cert. denied and appeal dismissed, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I), and Southern Burlington County NAACP v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mount Laurel II).