855 A.2d 582 (2004)
372 N.J.Super. 61
In re SIX MONTH EXTENSION OF N.J.A.C. 5:91-1 ET SEQ.
In re Grant of Extended Substantive Certification to Allamuchy Township, Lawrence Township, Harding Township, Union Township (Hunterdon County), Manalapan Township, Glen Rock Borough, Cranbury Township, Bayonne City, Ridgefield Borough and Denial of Motion to Invalidate Extended Substantive Certification Previously Granted to Forty-Six Municipalities.
In re Grant of Extended Substantive Certification to Allamuchy Township, Lawrence Township, Harding Township, Union Township (Hunterdon County), Manalapan Township, Glen Rock Borough, Cranbury Township, Bayonne City, Ridgefield Borough and Denial of Motion to Invalidate Extended Substantive Certification Previously Granted to Forty-Six Municipalities.
In the Matter of Extended Second Round Certification Granted to East Brunswick.
In re Readoption of N.J.A.C. 5:91-14.
In the Matter of Resolutions Approving Readington Township's Amendment to Substantive Certification by the New Jersey Council on Affordable Housing and Grant of Extension Pursuant to N.J.A.C. 5:91-14.3.
In re Grant of Extended Substantive Certification to Township of Roxbury.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 2004.
Decided August 31, 2004.
*584 Stephen M. Eisdorfer, Princeton, argued the cause for appellant New Jersey Builders Association in A-0795-02, A-1313-02, and A-4792-02 (Hill Wallack, attorneys; Mr. Eisdorfer and Henry T. Chou, on the briefs).
Kenneth H. Zimmerman argued the cause for appellant Coalition for Affordable Housing and the Environment in A-1931-02 (New Jersey Institute for Social Justice and Rutgers Environmental Law Clinic, attorneys; Mr. Zimmerman, Susan J. Kraham, New York, NY and John M. Payne, of counsel; Nancy L. Fishman and Craig R. Levine, on the brief).
*585 Carl S. Bisgaier, Cherry Hill, argued the cause for appellant Toll Brothers, Inc. in A-4814-02 (Flaster & Greenberg, attorneys; Mr. Bisgaier and Tracy A. Siebold, on the brief).
Thomas F. Carroll, Princeton, argued the cause for appellant Roxbury 80, L.L.C. in A-5228-02 (Hill Wallack, attorneys; Mr. Carroll and Stephen M. Eisdorfer, on the brief).
David J. Frizell, Metuchen, argued the cause for appellant Anthony Bailes et al. in A-3778-02 (Frizell & Samuels, attorneys; Mr. Frizell, on the brief).
George N. Cohen, Deputy Attorney General, argued the cause for respondent Council on Affordable Housing in all appeals (Peter C. Harvey, Attorney General, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Mr. Cohen, on the briefs).
Stuart R. Koenig, Cedar Grove, argued the cause for respondent State League of Municipalities in A-1313-02 and A-1931-02 (Stickel, Koenig & Sullivan, attorneys; Mr. Koenig, on the briefs).
Jeffrey R. Surenian, Toms River, argued the cause for respondent Borough of Bloomingdale in A-1313-02 and A-1931-02 (Lomell Law Firm, attorneys; Mr. Surenian, on the briefs).
Robert F. Munoz, Freehold, argued the cause for respondent Township of Manalapan in A-1931-02 (LoMurro, Davison, Eastman & Munoz, attorneys; Mr. Munoz, on the brief).
Howard D. Cohen, Lawrenceville, argued the cause for respondent Readington Township in A-4814-02 (Parker, McCay & Criscuolo, attorneys; Mr. Cohen, of counsel and, with Edward P. Abbott, on the brief).
Gerald J. Muller, Princeton, argued the cause for respondent Township of Roxbury in A-5228-02 (Miller, Porter & Muller, Special Counsel, and Jansen, Bucco, DeBona & Semrau, Municipal Attorneys, attorneys; Mr. Muller and Anthony M. Bucco, Riverdale, of counsel and on the brief).
Vogel, Chait, Collins & Schneider, attorneys for respondent Township of Allamuchy in A-1313-02 and A-1931-02 (Thomas F. Collins, Jr., Morristown and Thomas J. Molica, Jr., on the briefs).
Mason, Griffin & Pierson, attorneys for respondent Township of Cranbury in A-1313-02 and A-1931-02 (Trishka Waterbury, Princeton, on the brief).
Hoagland, Longo, Moran, Dunst & Doukas, attorneys for respondent Township of East Brunswick in A-3778-02 (George W. Pressler, Jr., New Brunswick and Anthony C. Iacocca, on the brief; Michael J. Baker appearing).
Mason, Griffin & Pierson, attorneys for respondent Township of Princeton in A-1313-02 and A-1931-02 (Edwin W. Schmierer, Princeton, of counsel; Trishka Waterbury, on the brief).
Basile, Birchwale & Pellino, attorneys for respondent Borough of Ridgefield in A-1313-02 and A-1931-02 (Stephen F. Pellino, Ridgefield, on the brief).
Durkin & Boggia, attorneys for respondent Village of Ridgefield Park in A-1313-02 (Martin T. Durkin, Ridgefield Park, on the brief).
Feldman & Fiorello, attorneys for respondent Township of Wayne in A-1313-02 and A-1931-02 (John Fiorello, Wayne, on the brief).
Brian D. Smith, White Township Attorney, attorney for respondent Township of White in A-1313-02 and A-1931-02.
Forty-five other municipalities join in the brief of respondent State League of Municipalities.
*586 Before Judges KESTIN, CUFF and LARIO.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
These seven related appeals, with common issues, were scheduled for argument and consideration together. We consolidate them for the purposes of this opinion.

I
The Council on Affordable Housing (COAH) adopted interim procedural rules in N.J.A.C. 5:91-14, effective November 1, 1999, designed to address the anticipated time gap between the expiration of its second-round cycle of low- and moderate-income housing requirements and the promulgation of its third-round methodology and rules. Those regulations, their substantive counterparts, and their predecessor provisions have been designed to implement the Mount Laurel cases[1] and the provisions of the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329, adopted initially in 1985. These appeals concern only N.J.A.C. 5:91-14.3, which provides a mechanism for municipalities previously certified in the second round to receive an extension of their substantive certification status and, therefore, further protection from civil action remedies, for up to one year following the adoption of the third-round rules, well beyond the previously scheduled 1999 expiration of second-round standards and methodology.
Specifically, N.J.A.C. 5:91-14.3(a) allows COAH to grant such "extended substantive certification" if a municipality:
1. Requests the extension;
2. Commits to continuing to implement the certified second round plan; and
3. Commits to addressing its third round fair share obligation with a newly adopted housing element and fair share plan.
A second subsection, N.J.S.A. 5:91-14.3(b) establishes the mechanism for a municipality "[t]o remain under the jurisdiction of [COAH.]" The regulation does not specify when the third-round rules will be promulgated.
In dealing with the issues advanced by the parties, we are mindful of the Supreme Court's order of April 27, 2004, recognizing COAH's "obligation ... under N.J.A.C. 1:30-6.2(c) to promulgate its Third Round Fair Share Methodology regulations no later than October 6, 2004, or the proposal expires[.]" In re Failure of New Jersey Council on Affordable Housing to Adopt Third Round Fair Share Methodology and to Allocate Third Round Fair Share Obligations, 180 N.J. 148, 849 A.2d 182 (2004). We are also aware of COAH's recently announced reproposal of its third-round methodology rules with public hearings scheduled thereon during the month of September 2004. See 36 N.J.R. 3691-874 (Aug. 16, 2004).
Appellants in these seven appeals are the New Jersey Builders Association (NJBA), the Coalition of Affordable Housing and the Environment (Coalition), Toll Brothers, Inc. (Toll Brothers), Roxbury 80, L.L.C. (Roxbury 80), and Anthony Bailes, et al. (Bailes). They challenge COAH's adoption, readoption and implementation of N.J.A.C. 5:91-14.3. On the whole, appellants raise similar arguments. They contend that N.J.A.C. 5:91-14.3 on *587 its face and as applied, is ultra vires, violates the State Constitution and the intent and goals of the FHA, and frustrates the essential holdings in the Mount Laurel cases and in Hills Dev. Co. v. Bernards Tp., 103 N.J. 1, 510 A.2d 621 (1986). Appellants also argue that the review process embodied in N.J.A.C. 5:91-14.3 violates the State Constitution and the FHA, and that the procedures provided in that regulationspecifically, the lack of any requirement for public notice, comment and hearingviolate State and federal constitutional rights to procedural due process, principles of administrative fairness underlying the Administrative Procedure Act ("APA"), N.J.S.A. 52:14B-1 to -15, and the FHA. One appellant, Roxbury 80, argues that the regulation frustrates the jurisdiction of the Law Division in a pending case.
Respondents contend, inter alia, that NJBA and the Coalition lack standing to challenge the regulation, and that all of the appeals are time-barred. Respondents also argue that the challenge in one case, A-795-02T5, is moot, as it involves a now expired six-month extension of COAH's procedural rules in chapter 91 of Title 5 of the New Jersey Administrative Code.

II
These appeals have foundations in State constitutional law and legislative enactments. An elucidation of those bases, as well as the administrative background and procedural history of the matters, is essential to a full understanding of the issues.

A.
COAH was established by the Legislature to provide an administrative mechanism for implementing the FHA, see N.J.S.A. 52:27D-305, with its underlying policy, in recognition of the Supreme Court's holdings in the Mount Laurel cases, that "every municipality in a growth area has a constitutional obligation to provide through its land use regulations a realistic opportunity for a fair share of its region's present and prospective needs for housing for low and moderate income families."[2]N.J.S.A. 52:27D-302(a). The Legislature further illuminated its policies and purpose by declaring:
that the State's preference for the resolution of existing and future disputes involving exclusionary zoning is the mediation and review process set forth in this act and not litigation, and that it is the intention of this act to provide various alternatives to the use of the builder's remedy[3] as a method of achieving fair share housing.
[N.J.S.A. 52:27D-303.]
The constitutionality of the FHA was upheld by the Supreme Court in Hills Dev. Co., supra.
The FHA's "comprehensive planning and implementation response to [the] constitutional obligation," N.J.S.A. 52:27D-302c, is to be effected by COAH. See N.J.S.A. 52:27D-305. Among the agency's express responsibilities under the FHA are: *588 from time to time ... to:
a. Determine housing regions of the State;
b. Estimate the present and prospective need for low and moderate income housing at the State and regional levels;
c. Adopt criteria and guidelines for:
(1) Municipal determination of its present and prospective fair share of the housing need in a given region[,]
as well as any adjustments that are required. N.J.S.A. 52:27D-307.
The FHA directs COAH, upon voluntary petition by a municipality, to review a municipality's housing element and fair share plan and to grant or deny, with or without conditions, substantive certification. N.J.S.A. 52:27D-307 and -314. The process is accomplished with COAH applying criteria and guidelines the agency is authorized to adopt. N.J.S.A. 52:27D-307c.
Until 2002, the fair share obligation was computed for a six-year period. In January 2002, the Legislature modified the period, extending it to ten years. Ibid., as amended by L. 2002, c. 435. The Legislature directed that this change apply to the methodology employed by COAH "for the certification period beginning June 7, 2000 and thereafter." N.J.S.A. 52:27D-307.6. In that amendment, the Legislature also directed COAH to "establish procedures for a realistic opportunity review at the midpoint of the certification period and [to] provide for notice to the public." N.J.S.A. 52:27D-313b.
N.J.S.A. 52:27D-310 contains the standards for the contents of a municipality's fair share plan. Further, "the municipality may provide for its fair share of low and moderate income housing by means of any technique or combination of techniques which provide a realistic opportunity for the provision of the fair share." N.J.S.A. 52:27D-311a. Substantive certification is not to be granted, however, unless a "municipality's fair share plan is consistent with the rules and criteria adopted by ... [COAH] and not inconsistent with achievement of the low and moderate income housing needs of the region[.]" N.J.S.A. 52:27D-314a.
Within a two-year period after perfecting its housing element, a municipality may file a petition with COAH for substantive certification. N.J.S.A. 52:27D-313a. The municipality's petition must contain its housing element and fair share plan demonstrating how it proposes to create realistic opportunities for sufficient low- and moderate-income housing to meet its fair share housing obligation. N.J.S.A. 52:27D-311a. The municipality must then publish notice of its petition and make information on its element and ordinances available to the public. N.J.S.A. 52:27D-313a.
If there is no objection from the public, COAH reviews the petition and grants substantive certification upon determining that the municipality's fair share plan is "not inconsistent with achievement of low and moderate income housing needs of the region," N.J.S.A. 52:27D-314a, and the housing element and implementation plan "make the achievement of the municipality's fair share of low and moderate income housing realistically possible[.]" N.J.S.A. 52:27D-314b. COAH is to "engage in a mediation and review process," on request or "if an objection ... is filed[.]" N.J.S.A. 52:27D-315a.
When COAH grants substantive certification, the municipality receives various benefits, including effective immunity from exclusionary zoning litigation. That is, substantively certified municipalities are presumed to be constitutionally compliant and, in any exclusionary zoning challenge, this presumption may be overcome only by clear and convincing evidence that the municipality's *589 housing element and implementing ordinances do not provide the realistic opportunity required by law. N.J.S.A. 52:27D-317a.
A municipality's participation in this statutory and regulatory scheme is optional, not mandatory. See Toll Bros., Inc. v. Township of West Windsor, 173 N.J. 502, 514, 803 A.2d 53 (2002); Hills Dev. Co., supra, 103 N.J. at 35, 510 A.2d 621. A municipality that has filed a housing element may, within two years of that filing, petition COAH for substantive certification or institute an action in the Superior Court for a declaratory judgment granting it repose. N.J.S.A. 52:27D-313a. If a municipality does not petition for substantive certification or seek repose, it is subject to Mount Laurel litigation, including suit for the imposition of a builder's remedy. See Toll Bros., supra, 173 N.J. at 513-14, 803 A.2d 53; Hills Dev. Co., supra, 103 N.J. at 35-36, 510 A.2d 621.

B.
A prerequisite of the substantive certification process is COAH's determination of each municipality's indigenous housing need and its share of the present and prospective regional low-and moderate-income housing need. See N.J.S.A. 52:27D-307. COAH has promulgated procedural and substantive rules setting forth its calculations for determining state and regional needs and municipal pre-credited needs, see N.J.A.C. 5:92,:93, and detailing the procedures governing its evaluation of the voluntarily submitted municipal housing elements and fair share plans, see N.J.A.C. 5:91.
Since the enactment of the FHA, COAH has provided those determinations for two periods of time. Commonly known as the "first-round" rules, the initial promulgation covered the period from 1987 to 1993. They were followed by criteria covering the cumulative period from 1987 to 1999, the "second-round" rules. See Fair Share Housing Ctr., Inc. v. Township of Cherry Hill, 173 N.J. 393, 403, 802 A.2d 512 (2002).
In enacting the FHA in 1985, the Legislature initially established a retroactive moratorium on builder's remedy lawsuits as of January 20, 1983, to afford COAH an opportunity to organize and to promulgate its first set of guidelines. N.J.S.A. 52:27D-328. The Supreme Court, in Hills Dev. Co., supra, 103 N.J. at 36, 510 A.2d 621, referred to this as an "inevitable start-up delay."
In 1986, COAH promulgated the first set of substantive rules, N.J.A.C. 5:92, which included its allocation formulas and calculations of municipal affordable housing obligations for the first round, 1987 (the base year for determining "present need") to 1993. See 18 N.J.R. 1527-60 (Aug. 4, 1986). That year, COAH also promulgated its corresponding procedural rules, N.J.A.C. 5:91. See 18 N.J.R. 1267-72 (June 16, 1986). In February 1991, COAH readopted N.J.A.C. 5:91 and 5:92 without change, to expire in February 1996. See 23 N.J.R. 688 (Mar. 4, 1991).
In 1994, after proposal, public hearings, reproposal, and further public hearings, COAH promulgated a set of substantive rules for the second round, which covered the cumulative period from 1987 to 1999. These standards were due to expire in June 1999. See N.J.A.C. 5:93; 26 N.J.R. 2300-412 (June 6, 1994). At the same time, COAH also promulgated and repromulgated new procedural rules. See N.J.A.C. 5:91.
In May 1999, COAH readopted N.J.A.C. 5:93 without change, providing for expiration in May 2004. See 31 N.J.R. 1479-1482 (June 7, 1999).
*590 On October 6, 2003, after the notices of appeal in these cases had been filed, COAH proposed new regulations for the third round: substantive rules for adoption as N.J.A.C. 5:94 and procedural rules for adoption as N.J.A.C. 5:95. See 35 N.J.R. 4636-710 (Oct. 6, 2003). Under the substantive standards of the third-round methodology, a municipality's fair share is to be computed by three components: (1) the rehabilitation share; (2) any remaining prior round obligation for 1987-1999; and (3) a completely new component, "growth share," which is "generated by Statewide residential and non-residential growth during the period from 1999 through 2014." 35 N.J.R. 4638. The proposed procedural rules contain standards for amending a substantive certification, but no interim procedures similar to those in N.J.A.C. 5:91-14.3, before us in these appeals.
In December 2003, COAH proposed readopting the second-round substantive rules, N.J.A.C. 5:93, before their expiration. See 35 N.J.R. 5467-68 (Dec. 15, 2003). In its published proposal, COAH stated that
[o]f the 566 municipalities in the State, 288 municipalities are currently in the COAH process and approximately 70 other towns have been sued for exclusionary zoning and are under the jurisdiction of the Superior Court of New Jersey. Also, there are 43 urban aid municipalities that have active affordable housing programs and chose to be receivers of regional contribution agreement (RCA) dollars.
[35 N.J.R. 5467.]

C.
These appeals bear upon COAH's latest promulgation of subchapter 14 of its procedural rules in N.J.A.C. 5:91, particularly N.J.A.C. 5:91-14.3, readopted effective April 2, 2003 for expiration on April 2, 2008. See 35 N.J.R. 1957 (May 5, 2003). The historical background of the rule will further illuminate the issues.
COAH first promulgated subchapter 14, effective January 1989, during the period of its first-round methodology, to provide a mechanism for amending the terms of a housing element and fair share plan after a municipality had received substantive certification. See 20 N.J.R. 2613(c)-2614 (November 7, 1988)(proposal); 21 N.J.R. 161-62 (Jan. 17, 1989)(adoption). The section was originally entitled "Amendment of Substantive Certification" and was due to expire in June 1991. Ibid. In February 1991, COAH readopted the 1989 version of subchapter 14 without change, and set it to expire in February 1996. See 23 N.J.R. 688 (Mar. 4, 1991).
During the drafting phase of the second-round substantive rules, COAH repealed subchapter 14 and promulgated a new rule effective December 1992. See 24 N.J.R. 2671-81 (August 3, 1992)(proposal); 24 N.J.R. 4344-61 (Dec. 7, 1992)(adoption). COAH also retitled subchapter 14 as "Interim Substantive Certification," and provided for expiration in December 1997. The new rule established a procedure for granting an "interim substantive certification" to municipalities that had received a substantive certification scheduled to expire prior to July 1, 1993. See Id. at 4356. Upon motion by such a municipality, COAH could issue an interim certification if it found that the municipality had complied with the terms of its substantive certification. The regulation provided for the imposition of conditions to insure continued compliance. The municipality was also required to provide notice to any objector or litigant that had participated in the original certification process or court settlement. The objector or litigant could oppose the interim substantive certification only by contending the municipality had *591 not complied with the terms of its original substantive certification. See ibid.
During the comment period for its proposed and reproposed second-round substantive rules in 1993, COAH again repealed subchapter 14 and promulgated new and more extensive rules for its interim substantive certification process. See 25 N.J.R. 1118-220 (Mar. 15, 1993) (proposal); 25 N.J.R. 3753-54 (Aug. 16, 1993) (adoption), renaming subchapter 14 "Interim Procedures." The new rules were designed to address situations involving: municipalities that had periods of repose or had substantive certification due to expire or already expired before adoption of the second-round substantive rules; municipalities that had petitioned for, but had not yet received, substantive certification prior to the effective date of the second-round rules; and, other municipalities that would be affected by the proposed comprehensive changes in the second-round substantive rules. See 25 N.J.R. 1119.
Specifically, under the 1993 version of subchapter 14, a municipality that had already received its first-round substantive certification could file a motion for "an interim substantive certification" if its certification had expired prior to the effective date of COAH's procedural rules for the second-round methodology or would expire within nine months after the effective date. See 25 N.J.R. 3754. In the absence of objections from the public, COAH could issue the interim certification for up to nine months following the effective date of the second-round methodology, conditioning its grant as necessary. See 25 N.J.R. 3753-54. In order to qualify a municipality for consideration, its motion was required: to comply with established COAH motion practice, and to be served on all objectors or litigants that had participated in first-round substantive certification or court settlement processes. The rules also required the application to be accompanied by: the municipality's current housing element and fair share plan; a resolution of the governing body expressing its intent to submit, within nine months after COAH's adoption of the second-round methodology, a housing element and fair share plan addressing the municipality's fair share housing obligation; a proposed schedule for the submission; and a statement as to the progress of the municipality's compliance with the terms of its first-round substantive certification. See 25 N.J.R. 3753-54. Objectors were required to specify the relief they sought and show how the municipality had failed to comply with the terms of its substantive certification or otherwise satisfy its fair share obligation. See 25 N.J.R. 3754. A municipality that received interim substantive certification could not change its ordinances implementing its original substantive certification during the period, unless it demonstrated good cause for the change. See ibid.
A municipality that had filed a petition for, but had not yet received, first-round substantive certification could either amend its housing element and fair share plan to address its new second-round obligation and then re-petition for substantive certification of the amended plan within nine months of COAH's promulgation of the new rules, or choose to continue seeking substantive certification on its first-round obligation. If the municipality continued to seek first-round substantive certification, COAH would condition its grant of substantive certification by a requirement that, within two years, the municipality file a housing element and fair share plan for round two and re-petition for substantive certification. See ibid.
Any municipality that filed its housing element and fair share plan more than two years before promulgation of the second-round methodology but did not petition for *592 substantive certification was vulnerable to an exclusionary zoning lawsuit. If filing had occurred less than two years before promulgation, the municipality was required to address its second-round obligation within two years of the initial filing or four months of the effective date of the second-round methodology, whichever was earlier. See ibid.
On August 16, 1999, pending the adoption of its third-round methodologywhich was not proposed until October 2003 COAH proposed repealing the regulations in subchapter 14, still titled "Interim Procedures," and replacing them with new rules, allowing municipalities either to file for interim second-round certification if they had not already addressed their 1987 to 1999 fair share housing obligations by June 6, 2000, the end of the second-round certification period; or to file for an extension if they already had an approved second-round substantive certification that was due to expire. See 31 N.J.R. 2319-20 (Aug. 16, 1999). COAH proposed these new regulations so that municipalities could
avail themselves of the Council's jurisdiction during the interim period between the expiration of the Council's second round rules and the adoption of the Council's third round methodology and rules.
By extending a second round substantive certification for municipalities that have expiring certifications during 2001 and 2002, the Council will retain jurisdiction over these municipalities. In addition, the proposed rules offer direction to municipalities that have not yet filed an adopted housing element and fair share plan with the Council under the second round rules and petitioned to have the plan reviewed.
[31 N.J.R. at 2319.]
These newly proposed interim procedural rules would allow a municipality that petitioned COAH on or before June 6, 2000, with an adopted housing element and fair share plan meeting the criteria of N.J.A.C. 5:93, to receive a six-year substantive certification. See N.J.A.C. 5:91-14.1. A municipality that petitioned after June 6, 2000, with a housing element and fair share plan meeting the criteria of N.J.A.C. 5:93, would receive an "interim substantive certification" that was valid for up to one year after the effective date of the adoption of COAH's third-round methodology. See N.J.A.C. 5:91-14.2.
For municipalities that had second-round substantive certifications expiring prior to or after the effective date of the adoption of COAH's third-round methodology, the proposal allowed requests for extension of the second-round substantive certification for up to one year after the effective date of the third-round methodology, i.e., an "extended substantive certification." N.J.A.C. 5:91-14.3(a). By way of example, COAH explained:
[I]f a municipality's second round substantive certification will expire on March 8, 2001, and the effective date of the Council's third round rules is September 6, 2001 (again, this date is illustrative only), that municipality's extension of substantive certification will be valid up to September 6, 2002. To remain under the jurisdiction of the Council, the municipality must either file a newly adopted housing element and fair share plan addressing the third round obligation or petition for a third round substantive certification on or before September 6, 2002. The length of the extension will vary from municipality to municipality depending upon the date of the second round certification. However, all municipalities that fall into this category will have had one year from the effective date of the third round *593 rules to address the third round affordable housing obligation.
[31 N.J.R. 2319.]
COAH adopted the proposed rules and procedures on October 6, 1999, effective November 1, 1999, to expire on November 5, 2002. See ibid. COAH proposed readoption of the regulations on October 21, 2002, and readopted them without change on April 2, 2003, with an expiration date of April 2008. See 34 N.J.R. 3604-06 (Oct. 21, 2002)(proposal); 35 N.J.R. 1957-60 (May 5, 2003) (adoption).

D.
In 2001, COAH began announcing directly to those municipalities whose substantive certifications were due to expire that the then current version of subchapter 14 would allow for extension of a substantive certification for up to one year after the effective date of the third-round methodology and rules. COAH explained that it had promulgated the new rules "[i]n order to protect municipalities that have expiring substantive certifications." COAH also advised: "By requesting an extension of substantive certification, your municipality must commit to continuing to implement your certified second round plan and to addressing your third round affordable housing obligation with either a filed or petitioned new housing element and fair share plan."
By June 2002, forty-six municipalities had received extended substantive certifications before their second-round certifications expired. Nine other municipalitiesrespondents Allamuchy Township, Lawrence Township, Harding Township, Union Township (Hunterdon County), Manalapan Township, Glen Rock Borough, Cranbury Township, Bayonne City and Ridgefield Boroughrequested and were scheduled to receive extended substantive certification at COAH's July 16, 2002 meeting. Between November 5, 2002, and May 5, 2003, COAH granted thirty-one other municipalities extended substantive certification. According to COAH, as of December 4, 2003, eighty-two municipalities had been granted extended second-round substantive certifications.
On July 15, 2002, the New Jersey Builders Association (the NJBA) filed motions with COAH seeking to intervene in the proceedings and to oppose COAH's grant of extended substantive certifications to the nine municipalities with matters pending at the time. The NJBA also sought withdrawal of the extended substantive certifications that COAH had previously granted to the first forty-six municipalities. The NJBA is a non-profit trade association with some 1600 members comprised of builders, developers, consulting professionals, general and subcontractors, tradespersons, and others engaged in real estate development in New Jersey.
In August 2002, the Coalition on Affordable Housing and the Environment (the Coalition), moved to intervene toward the same ends. The Coalition is a statewide non-profit corporation of planning, environmental and housing organizations. Its goals are to increase affordable housing opportunities, preserve natural resources and rebuild cities. The Coalition specifically requested that the petitioning municipalities be granted temporary extensions of their second-round certifications under the interim procedures that previously existed; and that COAH expedite rulemaking procedures to create a constitutionally permissible interim methodology.
Also in August 2002, the League of Municipalities (the League), moved to appear as amicus curiae. The League is a non-profit organization of 566 New Jersey municipalities. It supports COAH and the regulations at issue.
*594 At its September 4, 2002 meeting, COAH granted leave to the Coalition and the League to appear as amici.

E.
COAH resolved the issues raised in a written decision rendered on November 6, 2002. In addressing the issues bearing upon the validity of its interim regulations, COAH chose to "address the merits of the arguments presented by the participants in this matter[,]" rather than dispose of the matter on the basis of standing and timeliness arguments that had been made. The agency framed the question it was considering as: "whether it has the authority to grant the requests for the extended substantive certifications at issue here."
COAH rejected the NJBA's argument that the interim regulations were ultra vires because they allowed for certification based only on historical numbers. Holding that grants of extended certifications are within its authority, COAH opined that the interim rules specifically allow a municipality to continue addressing its second-round obligation based on second-round numbers while merely providing a compliant municipality with interim protection pending the release and adoption of the third-round methodology. When the third-round numbers and rules are proposed and adopted, municipalities with extended second-round certifications will be required to address their third-round obligations, since they must commit to addressing their third-round obligations as a condition of receiving the extension. In that way, COAH stated, any delay in the determination of a municipality's ongoing obligation will be accounted for and recaptured in the third-round methodology. By way of explaining its expectation that a municipality's ongoing obligation would eventually be met by the certification of its fair share plans during the third-round compliance period, COAH declared:
The Council's third-round methodology and rules, once adopted, will comply with the requirements of the FHA and the Mount Laurel doctrine. The third-round methodology will continue the work of the first- and second-round methodologies and implementing regulations by fairly and accurately determining the state-wide affordable housing need and by assigning that need to the State's municipalities. The mere fact that there may be a "gap" between the second and third compliance periods, does not violate the Mount Laurel doctrine. In fact, there was a similar gap between the first and second round compliance periods as well as the first-round compliance period was from 1987 to 1993, yet the second-round rules were not adopted until June 6, 1994. Nonetheless, the affordable housing need was calculated from July 1987 through July 1999, creating a continuous calculation period upon which the first and second-rounds were based. Likewise, the third-round numbers will ultimately capture the full housing need projected through 2010. Based on this history, the Council saw fit to provide compliant towns with some degree of protection from a builder's remedy lawsuit during this "gap" period by adopting rules which extend second-round substantive certifications.
COAH also rejected the argument that its extensions of second-round substantive certifications have deprived or will deprive anyone of the opportunity to challenge a municipality's housing element and fair share plan, noting that extended substantive certification does not preclude future exclusionary zoning suits or "provide towns with a `bullet proof vest,'" but merely extends the presumption of validity *595 to a municipality's housing element and fair share plan.
The argument that COAH should not grant extended substantive certifications without first engaging in scarce resource analyses was also disallowed in the decision. Noting that its regulations "do not preclude any party from filing an application for a scarce resource restraint when a municipality seeks or receives an extension," COAH declared:
Pursuant to N.J.A.C. 5:91-10.1, any party may apply to the Council at any time for a scarce resource restraint to preserve land or other resources for affordable housing. To date, none have been filed for any municipality currently receiving extended certification pursuant to N.J.A.C. 5:91-14 et seq. Nonetheless, should COAH receive any such applications those would, of course, be considered in accordance with COAH's procedural rules.
COAH also rejected the argument that interim regulations were not necessary because municipalities could protect themselves from potential Mount Laurel litigation by submitting to the jurisdiction of the Superior Court. Citing N.J.S.A. 52:27D-303, COAH noted that that argument ignored "one of the primary purposes" of the FHA, i.e., to provide an alternative to court action and to the possibility of potentially inconsistent court determinations made on a case-by-case basis. Thus, given the preferences expressed by the Legislature and the courts that such matters be resolved by COAH, "towns should [not] go back to the courts for exclusionary zoning issues."
Additionally, COAH rejected the argument that it should create "interim numbers" for those municipalities seeking extensions of their second-round obligations, noting that such a process "would only serve to divert attention from the Council's current priority, i.e., creating the third-round methodology." COAH declared:
It is undisputed that the Council is involved in a highly complex and sensitive process in creating the third-round methodology. This process has and will continue to require the Council's focused attention. As such, the Council has been and will continue to focus its efforts on creating a thoughtful and deliberative methodology and implementing regulations.
Finally, COAH declined to address the argument that its interim procedures, whereby extensions were granted without requiring public notice or opportunity for a hearing, offended notions of procedural due process. COAH explained that it was readopting the interim rules along with all of its procedural regulations, and that it would address such issues during the rule-making process, "and make whatever revisions to the rules it deems necessary."
For the reasons stated, COAH, in the November 6, 2002 decision, granted the nine extended substantive certifications before it and affirmed its actions in previously granting forty-six extensions.

F.
The appeals from COAH's November 6, 2002 determinations are subsumed in two of the matters before us, A-1313-02 and A-1931-02. A third appeal, A-795-02, is from COAH's readoption of the regulation at issue at its meeting on June 5, 2002, announced in the New Jersey Register on October 21, 2002. 34 N.J.R. 3604-06. Both this court and the Supreme Court declined to stay the extension of COAH's procedural rules. During the readoption process, COAH continued to communicate directly with municipalities about to experience expiration of their second-round substantive certifications.
*596 Three additional appeals, A-3778-02, A-4814-02 and A-5228-02, encompass challenges by individual builders to COAH's grants of extended substantive certification. The last of those involves Roxbury Township. An additional argument is made there that COAH was without jurisdiction to grant extended substantive certification because the municipality was then involved in Mount Laurel litigation over the appellant's property. We reject that issue as without sufficient merit in the circumstances to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).
While some of the foregoing appeals were pending, COAH, on April 2, 2003, readopted subchapter 14 without change. See 35 N.J.R. 1957-60 (May 5, 2003). The appeal challenging the readoption is under docket no. A-4792-02.

III
These matters collectively, are a combination of appeals from declaratory rulings, see N.J.S.A. 52:14B-8, and challenges to rule promulgations, see R. 2:2-3(a)(2). We are not dealing with the type of evidentiary evaluation typically occurring in adjudicatory proceedings on the administrative level where factual findings from disputed proofs and credibility determinations have been made. The issues before us are questions of law.
The agency was manifestly correct to eschew disposing of the issues on standing and timeliness grounds, and, instead to elect to address the merits. Nor do considerations of mootness apply at this time to suggest a merits determination to be inappropriate. We reject the arguments advanced by some respondents on these adjective grounds.

A.
The standing issue raised by some respondents is based on contentions that the NJBA is merely a trade organization, and that the Coalition is not a legal entity, but merely "a loose affiliation of various housing, environmental and regional planning organizations." Such arguments ignore this State's liberal standards for recognizing standing in rule challenges, whether framed as petitions for declaratory relief on the administrative level, see N.J.S.A. 52:14B-8, or otherwise advanced, see R. 2:2-3(a)(2).
In general, standing is a threshold justiciability determination whether the litigant is entitled to initiate and maintain an action before a court or other tribunal. See In Re Adoption of Baby T., 160 N.J. 332, 340, 734 A.2d 304 (1999). Typically, "standing requires that a litigant have a sufficient stake and real adverseness with respect to the subject matter of the litigation, and a substantial likelihood that some harm will fall upon it in the event of an unfavorable decision." Neu v. Planning Bd. of Township of Union, 352 N.J.Super. 544, 552, 800 A.2d 908 (App.Div.2002) (quoting In re N.J. Bd. of Pub. Utils., 200 N.J.Super. 544, 556, 491 A.2d 1295 (App.Div.1985)). Standing, however, is not automatic, and a litigant usually has no standing to assert the rights of a third party. See Spinnaker Condo. Corp. v. Zoning Bd. of City of Sea Isle City, 357 N.J.Super. 105, 111, 813 A.2d 1282 (App.Div.), certif. denied, 176 N.J. 280, 822 A.2d 609 (2003).
New Jersey courts have set a low threshold for standing in various types of cases, civil and criminal, affording parties to lawsuits the benefits of liberal interpretations of requirements that bear upon eligibility to litigate particular issues. See Triffin v. Somerset Valley Bank, 343 N.J.Super. 73, 81, 777 A.2d 993 (App.Div.2001); see also, e.g., Crescent Park Tenants Ass'n v. Realty Equities Corp. of *597 N.Y., 58 N.J. 98, 101, 275 A.2d 433 (1971) (New Jersey cases have "historically taken a much more liberal approach on the issue of standing than have the federal cases"); State v. Miller, 342 N.J.Super. 474, 478, 777 A.2d 348 (App.Div.2001). In public interest and group litigation, especially, standing has been approached permissively. See Pressler, Current N.J. Court Rules, comment 3 on R. 4:26-1 (2004). In particular, our courts have taken a liberal approach to standing in land use cases. See Home Builders League of S. Jersey, Inc. v. Township of Berlin, 81 N.J. 127, 132-35, 405 A.2d 381 (1979) (Public Advocate, builders and nonprofit association whose members were engaged in housing construction or related businesses had standing to challenge provisions of municipal zoning ordinances). In Mount Laurel cases, specifically, the Supreme Court has instructed:
[T]he need for a "liberal approach" to standing is especially important in Mount Laurel litigation. The people who have the greatest interest in ending exclusionary zoning, non-resident poor people and organizations such as the Urban League, which represent the interests of such people, very often have little or no direct relationship with particular exclusionary municipalities. In fact, the whole problem is that exclusionary zoning prevents such relationships from developing. Thus, we hold that any individual demonstrating an interest in, or any organization that has the objective of, securing lower income housing opportunities in a municipality will have standing to sue such municipality on Mount Laurel grounds.
[Mount Laurel II, supra, 92 N.J. at 337, 456 A.2d 390.]
Accordingly, there is no adequate basis for holding that the NJBA and the Coalition lack standing in this matter. See also Holmdel Builders Assoc. v. Township of Holmdel, 121 N.J. 550, 585-86, 583 A.2d 277 (1990); Morris Cty. Fair Housing Council v. Boonton Twp., 197 N.J.Super. 359, 365-66, 484 A.2d 1302 (Law Div. 1984), aff'd o.b., 209 N.J.Super. 108, 506 A.2d 1284 (App.Div.1986).

B.
The time-bar argument centers on contentions that appellants are precluded from filing any appeal because: they failed to challenge COAH's initial forty-six grants of extended substantive certifications within the forty-five days required by R. 2:4-1; they failed to object to COAH's promulgation of the regulations within one year as required by N.J.S.A. 52:14B-4(d); and, many municipalities have relied on the implementation of subchapter 14 and the extended substantive certifications granted by COAH.
A party's failure to register a timely objection or to participate in administrative proceedings does not preclude judicial review. Our Supreme Court has held that the right to "seek judicial review of administrative decisions inheres not only in those who are direct parties to the initial proceedings before an administrative agency ... but also belongs to all persons who are directly affected by and aggrieved as a result of the particular action sought to be brought before the courts for review." Elizabeth Fed. Sav. & Loan Ass'n v. Howell, 24 N.J. 488, 499-500, 132 A.2d 779 (1957). Accord In re Camden Cty., 170 N.J. 439, 447, 790 A.2d 158 (2002); SMB Assocs. v. N.J. Dep't of Envtl. Prot., 137 N.J. 58, 62, 644 A.2d 558 (1994) (Garibaldi, dissenting). "In this State, the right to seek judicial review of administrative action is of constitutional dimension." Hirth v. City of Hoboken, 337 N.J.Super. 149, 160, 766 A.2d 803 (App.Div.2001).
*598 The forty-five-day time limit on appeals from final decisions of state administrative agencies does not generally apply to challenges to the validity of agency regulations, especially where the challenges raise constitutional questions or involve important questions implicating the public interest. See Bergen Pines Cty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 471 n. 10, 476 A.2d 784 (1984); Baer v. Klagholz, 339 N.J.Super. 168, 226, 771 A.2d 603 (App.Div.), certif. denied, 170 N.J. 84, 784 A.2d 717 (2001). "[T]he forty-five day rule applies only to an agency's quasi-judicial decisions that adjudicate the rights of a particular individual." Northwest Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 135, 770 A.2d 233 (2001).
The argument that Bergen Pines stands for the proposition that challenges to a regulation are foreclosed when the appellants do not participate in the rulemaking process, is misplaced. There, the Court held that a hospital was not entitled to a factual hearing when it had possessed evidence contrary to a proposed rule's factual premises and had not raised those objections at the time of the rule's promulgation. Bergen Pines, supra, 96 N.J. at 474-75, 476 A.2d 784. Here, by way of contrast, appellants challenge the validity of the regulations, both facially and as applied by COAH in granting the extended substantive certifications. We have not regarded Bergen Pines as "barring facial legal challenges to the constitutionality or to the authority of the ... [agency head] to adopt particular regulations." Cumberland Farms, Inc. v. Moffett, 218 N.J.Super. 331, 337 n. 2, 527 A.2d 913 (App.Div.1987). To the contrary, we have held specifically that a party may attack the validity of COAH regulations even if that party did not challenge them when originally proposed. See In re Township of Warren, 247 N.J.Super. 146, 158, 588 A.2d 1227 (App.Div.1991), rev'd on other grounds, 132 N.J. 1, 622 A.2d 1257 (1993).
The timeliness argument based on N.J.S.A. 52:14B-4d is unavailing, as well. By its very terms, the one-year time bar of that provision is limited to instances where the promulgation of a rule is based on "noncompliance with the procedural requirements of this act[.]" Here, the challenge bears upon the substance of the regulation.
We also see no timeliness preclusion arising from the municipalities' reliance on the implementation of subchapter 14 and the extended substantive certifications granted by COAH. Questions of constitutionality and public interest cannot be barred on such ephemeral grounds.

C.
COAH argues that the NJBA's appeal in A-795-02 is moot because the regulations specifically challenged there have already expired. This argument must be rejected in every sense beyond the purely technical because of the new appeal filed by the NJBA in A-4792-02, raising the same objections after COAH had readopted the regulations without change.

IV
In their facial challenge to N.J.A.C. 5:91-14.3, appellants specifically argue that the FHA does not authorize COAH to grant extended substantive certifications, or confer implied authority to adopt such a regulation. They contend also that COAH's grant of extended substantive certifications violates the requirement of N.J.S.A. 52:27D-314 that municipal fair share plans be based on present and prospective fair share housing needs, as well as the constitutional mandate that obligations must be met on a year-by-year basis as those obligations accrue. The *599 claim is that, by granting extended certifications and not finalizing third-round numbers or releasing interim obligations that would quantify the municipalities' continuing realistic obligations during the gap period, COAH has effectively excused New Jersey's municipalities from meeting the obligations to provide their fair share of affordable housing, which obligations continue to accrue in the intervening time period. Appellants argue that the Mount Laurel doctrine's fair share requirement cannot be phased in or satisfied after the fact; and they assert that COAH's second-round regulations clearly envisioned the release and adoption of third-round numbers and regulations by the end of the second round, which has not happened.
Appellants assert that COAH uses this interim procedure to excuse the agency from adopting its third-round methodology and rules in a more timely fashion. The effect is to extend expired substantive certifications, creating an indefinite moratorium on Mount Laurel compliance. Appellants point out that this moratorium has resulted in the depletion of land resources critical to the provision of a realistic opportunity for the creation of affordable housing. Appellants also argue that the gaps in Mount Laurel implementation on initial start-up and between adoption of the first- and second-round methodologies were of finite duration and provide no precedent or justification for COAH's current practice.
Thus, appellants contend, because COAH promulgated N.J.A.C. 5:91-14.3 without also determining or accounting for the municipalities' Mount Laurel obligations for the gap period, i.e., their post-1999 fair share housing obligations, or without expeditiously adopting the third-round methodology and rules, the regulation granting extensions of substantive certification is ultra vires. Because it violates the promotion of sound planning principles required by the Mount Laurel decisions and the FHA, appellants argue, all extended certifications granted by COAH under that regulation must be invalidated. Appellants assert that invalidating N.J.A.C. 5:91-14.3 will have no significant negative impact upon the municipalities because those with expired substantive certifications will continue to be protected in any exclusionary zoning litigation as long as they are performing their constitutional duties.
COAH and the municipal respondents contend, conversely, that N.J.A.C. 5:91-14.3 realisticallyand properlyrecognizes and deals with the gap between the expiration of the second-round standards and COAH's adoption of its third-round methodology and rules. They stress that, when the same type of gap occurred between the first and second rounds, COAH retroactively incorporated in succeeding methodology the Statewide need for the period commencing with the end of the prior regime; thus achieving a cumulative result.
Respondents further argue that invalidating the mechanism for granting extended substantive certifications would create chaos and open the floodgates to time-consuming and expensive builder's remedy lawsuits, which the FHA was designed to prevent. They assert that this would also increase the risk of piecemeal determinations of Mount Laurel obligations by courts acting on a case-by-case basis, frustrating the coherent statewide approach called for in the FHA. It would effectively mean a return to the pre-FHA period, despite the Legislature's clearly expressed intent to move toward the resolution of exclusionary zoning disputes via mediation and the processes provided by statute rather than through litigation. See N.J.S.A. 52:27D-303.
*600 Many of the respondent municipalities assert that they are discharging, have already complied with, or have exceeded their low- and moderate-income housing obligations in their second-round substantive certifications. The record before us does not allow for a determination concerning the accuracy of these representations.

V

A.
We conclude, on balance, in the circumstances, that, as a matter of administrative prerogative to deal with current exigencies in realistic and principled ways, the grant of extended substantive certifications to municipalities with expiring second-round substantive certifications does not exceed the authority granted COAH under the FHA to implement the constitutional imperatives informing the Mount Laurel cases.
The standards by which we measure the validity of non-adjudicative administrative action are elucidated in George Harms Constr. Co. v. N.J. Turnpike Auth., 137 N.J. 8, 644 A.2d 76 (1994). We are limited to determining whether the agency action is arbitrary, capricious, or unreasonable. In approaching that question, four inquiries are customary:
(1) whether the agency's decision offends the State or Federal Constitution;
(2) whether the agency's action violates express or implied legislative policies;
(3) whether the record contains substantial evidence to support the findings on which the agency based its action; and
(4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[Id. at 27, 644 A.2d 76.]
Administrative regulations are presumed to be valid. See New Jersey State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999); In re Adoption of Amendments to N.J.A.C. 5:93-1.3 and 5:93-5.3, 339 N.J.Super. 371, 383, 772 A.2d 9 (App.Div.2001). The party challenging a regulation has the burden of overcoming that strong presumption. See Medical Soc'y of N.J. v. Department of Law & Pub. Safety, 120 N.J. 18, 25, 575 A.2d 1348 (1990). Determinations of ultra vires action are disfavored. See New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978).
The statutory grant of power by the Legislature to an agency can either be express or implied. See id. at 561-62, 384 A.2d 795; cf. James v. Board of Trustees of Pub. Employees' Ret. Sys., 164 N.J. 396, 404-05, 753 A.2d 1061 (2000). Courts give appropriate deference to an agency's interpretation of its own enabling legislation, see Medical Soc'y, supra, 120 N.J. at 25-26, 575 A.2d 1348, and this interpretation should prevail "so long as it is not plainly unreasonable." Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984).
The decision whether or not to defer in a particular instance depends, as much as anything else, upon experience in the light of the agency's past practices. The concept of deference to an agency's specialized expertise, see New Jersey State League of Municipalities, supra, 158 N.J. at 222, 729 A.2d 21, has inherent limitations. It is most generously applied when new and innovative legislation is being put into practice. See Newark Firemen's Mut. Benevolent Ass'n, Local No. 4 v. City of Newark, 90 N.J. 44, 55, 447 A.2d 130 (1982). Experience may suggest boundaries, however.
*601 More than a decade ago, as a matter of principle, "judicial deference to agency action" was seen as "particularly well-suited to [judicial] review of administrative regulations adopted by COAH to implement the Fair Housing Act," which, then, was considered a relatively "`new and innovative legislative response to deal with the statewide need for affordable housing.'" Township of Warren, supra, 132 N.J. at 27, 622 A.2d 1257 (quoting Van Dalen v. Washington Township, 120 N.J. 234, 246, 576 A.2d 819 (1990)). "Because the legislative scheme is novel, the implementation of its goals is necessarily an evolving process. Accordingly, COAH is entitled to a reasonable degree of latitude...." Van Dalen v. Washington Township, supra, 120 N.J. at 246, 576 A.2d 819. In fact, our courts have repeatedly commented on COAH's broad discretion in implementing the Mount Laurel doctrine and the FHA. See Bi-County Dev. of Clinton, Inc. v. Borough of High Bridge, 174 N.J. 301, 325, 805 A.2d 433 (2002); Township of Warren, supra, 132 N.J. at 27, 622 A.2d 1257; Holmdel Builders Ass'n, supra, 121 N.J. at 577, 583 A.2d 277. And, our courts have found COAH to have implied regulatory power despite specific, although conflicting, statutory language to the contrary. New Jersey State League of Municipalities, supra, 158 N.J. at 225, 729 A.2d 21.
Yet, courts give no deference to agencies with respect to determinations of issues of law; they apply a de novo standard of judicial review. See, e.g., Abbott v. Burke, 100 N.J. 269, 298-99, 495 A.2d 376 (1985); Application of Boardwalk Regency Corp. for a Casino License, 180 N.J.Super. 324, 333, 434 A.2d 1111 (App.Div.1981), modified on other grounds, 90 N.J. 361, 447 A.2d 1335 (1982). Whether a regulation is valid is a question of law.
COAH decisions, also, like those of any administrative agency, are to stand unless arbitrary, capricious or unreasonable. See Township of Warren, supra, 132 N.J. at 26, 622 A.2d 1257; Van Dalen, supra, 120 N.J. at 244-45, 576 A.2d 819; In re Adoption of Amendments to N.J.A.C. 5:93-1.3 and 5:93-5.3, supra, 339 N.J.Super. at 383, 772 A.2d 9. COAH's regulations "cannot alter or enlarge the statutory mandate[,]" however. See Calton Homes, Inc. v. Council on Affordable Hous., 244 N.J.Super. 438, 449, 582 A.2d 1024 (App.Div.1990), certif. denied, 127 N.J. 326, 604 A.2d 601 (1991). Indeed, the Supreme Court has had occasion to invalidate COAH's exercise of its regulatory power under the FHA. See Township of Warren, supra, 132 N.J. at 31, 622 A.2d 1257. In the final analysis, it is the courts' function to interpret an agency's enabling statute to determine whether the agency's actions are consistent with the policy established by the Legislature or exceed the scope of the agency's jurisdiction. See Mayflower Secs. Co. v. Bureau of Secs. in Div. of Consumer Affairs, 64 N.J. 85, 93, 312 A.2d 497 (1973); Swede v. City of Clifton, 22 N.J. 303, 312, 125 A.2d 865 (1956).

B.
With a straightforward application of the George Harms standards, in the context of the FHA's policies and requirements, we discern no clear flaw, in principle, in the cumulative-requirement concept employed by COAH, resulting in extended certifications to municipalities with expiring substantive certifications pending COAH's promulgation of new standards governing successive phases in effecting the State's constitutional and statutory policies. COAH has broad powers to promulgate flexible measures to implement the FHA.
The Act grants COAH the authority to adopt "all rules and regulations necessary *602 or expedient for the prompt and effective carrying out of ... this act." N.J.S.A. 52:27D-307.5. The FHA also requires COAH to adjust affordable housing obligations periodically, and to develop appropriate corresponding procedures. See N.J.S.A. 52:27D-307. The Supreme Court has acknowledged that "[i]mplicit in these provisions [of the FHA]indeed, implicit throughout the entire Act, whose purpose is in part to create an agency capable of overseeing the continuing resolution of a monumental social taskis the power, in the Council, to promulgate whatever rules and regulations may be necessary to achieve its statutory task." Hills Dev. Co., supra, 103 N.J. at 61, 510 A.2d 621.
Both the Legislature and the Supreme Court have declared their intent to establish a system that provides a realistic opportunity for housing, not litigation. "The legislative history of the Act makes it clear that it had two primary purposes: first, to bring an administrative agency into the field of lower income housing to satisfy the Mount Laurel obligation; second, to get courts out of that field." Id. at 49, 510 A.2d 621. COAH's authority, in order to be workable, must be flexible.
Although there is no express grant of authority to COAH to adopt a mechanism that permits years of litigation protection without specific housing obligations, the agency is obliged to assure that municipalities do not lose that protection while COAH, itself, is re-crafting those obligations "`from time to time' in accordance with changing needs and changing circumstances." Id. at 33, 510 A.2d 621 (quoting N.J.S.A. 52:27D-307). Thus, as a basic matter, COAH must be seen to have constitutional and legislative authority to grant extended substantive certifications to municipalities with expiring second-round substantive certification.

C.
Nevertheless, the manner in which that authority has been exercised is flawed for several related reasons, including the altogether too-extended time gap between the expiration of second-round standards and the promulgation of third-round standards; the lack of any ongoing substantive review criteria and procedures for acquiring the updated protections that are designed to assure that the State's constitutional and legislative policies are being faithfully pursued; and the absence of any requirement for public notice of the application for extension and the opportunity for those with an interest to comment or otherwise participate in the process.
Delay, itself, is not always fatal. See Sod Farm Assocs. v. Township of Springfield, 366 N.J.Super. 116, 131, 840 A.2d 885 (App.Div.2004)(citing Hills Dev. Co., supra, 103 N.J. at 41, 510 A.2d 621). Here, however, the delay has been dramatic and inexplicable. See In re March 22, 2002 Motion to Dismiss and Intervene in the Petition of Howell Township, 371 N.J.Super. 167, 186-87, 852 A.2d 258 (App.Div. 2004). The second round standards expired in 1999, and COAH has only lately proposed and re-proposed its third-round methodology, almost at the end of another six-year cycle, which, but for the recent amendment in L. 2001, c. 345, would have concluded another round of Mount Laurel administration. The impact of the delay is global, not just bearing upon one municipality and those involved in it, as in Sod Farm. The conclusion is obvious: even though N.J.A.C. 5:91-14.3 does not expressly implement a moratorium on compliance by municipalities with their Mount Laurel obligations, the actual facts are that no new obligations have been effected. For nearly the equivalent of one full round of Mount Laurel administration, no municipality has been held to updated standards *603 reflecting its present and prospective fair share of the housing needs of its region. The public policies underlying the FHA and the Mount Laurel cases have, quite obviously, been frustrated by inaction.
Respondents, both COAH and the respective municipalities, contend that the gap between the second-round and third-round methodologies is less significant than appears. They urge that the delay is not indefinite and that the third-round methodology will be cumulative and capture any obligation. In support of this perspective they cite Mount Laurel II, supra, 92 N.J. at 219, 456 A.2d 390, where the Supreme Court opined: "In this sense the affirmative obligation to provide a realistic opportunity to construct a fair share of lower income housing is met by a `phase-in' over those years; it need not be provided immediately[;]" and Hills Dev. Co., supra, 103 N.J. at 40, 510 A.2d 621, where the Court characterized as "a totally false premise" the notion of "some constitutional timetable implicit in" satisfaction of the constitutional obligation. Respondents stress that the FHA itself, contemplates that municipalities would be able to "adopt appropriate phasing schedules for meeting their fair share." N.J.S.A. 52:27D-302e. Thus, they argue, there is no statutory or constitutional impediment for COAH to incorporate the housing obligations in the gap years into the housing obligations in its succeeding methodology, as it has in the past.
We are constrained to observe that the permissive approach to the passage of time connoted by Mount Laurel II and Hills Dev. Co., twenty-one and eighteen years ago, respectively, was applied when the subject matter was new and COAH was only an idea or in its infancy. The passage of so much time since then places a different perspective on the principle. Nevertheless, although factual figures, when ultimately developed, might never provide an adequate basis for recapturing the gap-time obligations of particular municipalities, to conclude so now, on the records before us in these appeals, would be speculative. We are obliged to accept COAH's intentions and goals as stated, and leave to future development and remediation on the basis of actual facts and figures particularized on a municipality-by-municipality basis, any idea that real opportunities for affordable housing have been irretrievably lost during the gap in ways that do not comport with the policies and principles underlying the process.
Although the validity of the notion of cumulative extensions, applied in principled ways, cannot be gainsaid, the manner in which N.J.A.C. 5:91-14.3 effects the concept is flawed, especially in the face of COAH's inability to develop its successive methodologies on more timely bases.

D.
Appellants also contend that N.J.A.C. 5:91-14.3 is invalid and violates the FHA and the State Constitution, because it establishes no ascertainable standards or review process to govern COAH's determination whether to grant a request for extended substantive certification. Appellants assert that COAH's assumed role in granting extended certification merely upon the receipt of a municipality's request by resolution, without an independent evaluation, is insufficient, and relinquishes COAH's statutory obligation to require municipalities to provide proof of how they are meeting their current fair share housing obligations. More particularly, citing In re Petition for Substantive Certification, Township of Southampton, supra, 338 N.J.Super. at 114-16, 768 A.2d 233, appellants argue that N.J.A.C. 5:91-14.3 is invalid and violates the FHA because of the lack of any substantive *604 review in the mechanism provided. Appellants assert that COAH must perform more of a review than is provided in the regulation, to the extent of making its own inquiries as required, and arriving at considered judgments. These contentions have merit, for it isundeniablyCOAH's statutorily conferred responsibility to monitor the field and enforce the State's public policies promoting affordable housing.
Appellants further claim that subchapter 14 is invalid and violates the State Constitution because it fails to require that municipalities seeking interim relief take steps to protect scarce resources essential to the construction of affordable housing. Appellants are concerned that a municipality seeking an extension of its second-round substantive certification may, at the same time, have a shortage of available land or sewerage capacity or other resources, and that those resources will be effectively dissipated during the period of extended substantive certification. Thus, appellants also object to N.J.A.C. 5:91-14.3 because it does not require municipalities to document the possible existence of scarce resources, and does not recognize COAH's obligation to determine whether indeterminate excusal of a municipality from meeting its post-1999 housing obligation will result in the dissipation of scarce resources.
COAH, in response, reiterates the positions it took in its November 6, 2000 opinion; and the supporting municipalities echo those theses. Respondents contend that a sufficient review process is set forth under N.J.A.C. 5:91-14.3, because the municipalities requesting extended substantive certification have already gone though the primary process of obtaining substantive certification and because extension of their grants does nothing to change a housing plan or the municipality's obligations under that plan. Thus, they assert, COAH's review under the regulation is, properly, only ministerial in nature, and that extending substantive certification simply maintains the status quo, requiring no further fact finding or quasi-judicial proceeding.
Respondents also argue that the lack of an inherent review process for scarce resources does not invalidate the regulation because N.J.A.C. 5:91-10.1 provides a procedure whereby "any interested party" can raise the issue of scarce resources with COAH at anytime. That opportunity is not affected by COAH's promulgation of the process that extends substantive-certification.

VI
Regulations, particularly those governing an agency's discretionary decisions, must adequately articulate relevant standards and principles both to inform the public and guide the agency. See Lower Main Street Assocs. v. N.J. Hous. & Mortgage Fin. Agency, 114 N.J. 226, 235, 553 A.2d 798 (1989). "[W]hen there [is] a significant failure to provide either statutory or regulatory standards that would inform the public and guide the agency in discharging its authorized function," an administrative agency's actions are subject to nullification. Ibid.
In In re Crown/Vista Energy Project, 279 N.J.Super. 74, 84, 652 A.2d 212 (App. Div.), certif. denied, 140 N.J. 277, 658 A.2d 301 (1995), the court declared that, "where a regulation does provide some standards or criteria, a substantial degree of discretion allows the agency the flexibility to deal with the varying circumstances." Where some regulatory standards are provided, the regulations need only be "sufficiently definite to inform those subject to them as to what is required. At the same time, regulations must be flexible enough *605 to accommodate the day-to-day changes in the area regulated." In re Review of Admin. Promulgation of the N.J. Assoc. of Health Care Admin. Bd.: N.J.A.C. 8:30-14.1 through 8:30-14.6, 83 N.J. 67, 82, 415 A.2d 1147, certif. denied, 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980).
In a substantive sense, the standards and principles articulated in N.J.A.C. 5:91-14.3 are insufficient to inform the public and guide the agency. Pursuant to that regulation, COAH is to grant extended substantive certification if a municipality with a substantive certification that is expiring adopts a resolution that requests the extension; if it commits to continuing the implementation of its second-round obligations; and, if it commits to addressing its third-round obligations with a new housing element and fair share plan whenever the third-round standards become effective. Thus, N.J.A.C. 5:91-14.3, on its face, does not fall for a lack of standards. According to that regulation, COAH's role at this stage is ministerial. See, e.g., Jersey City v. Dep't of Civil Serv., 57 N.J.Super. 13, 45-46, 153 A.2d 757 (App.Div.1959). And, N.J.A.C. 5:91-10.1 does allow "any interested party" to apply to COAH at any time for a scarce resource restraint to preserve land or other resources for affordable housing. Nevertheless, both the ministerial nature of the process provided in N.J.A.C. 5:91-14.3, and its lack of a more extensive procedure for granting extended substantive certification violate the policies and specific requirements of the FHA.
The FHA expressly requires that COAH conduct an extensive review process when evaluating a request for substantive certification, N.J.S.A. 52:27D-314, or for engaging in mediation, N.J.S.A. 52:27D-315. Although the review process in those provisions is required literally for the grant of initial substantive certifications, the Legislature, in the relatively recent enactment in L. 2001, c. 435, has articulated a clear design requiring COAH to conduct an interim review that is more than merely ministerial in nature when substantive certification is to be significantly extended. See Statement to the First Reprint, Assembly No. 2375.
In that amendment to the FHA, the Legislature changed the grant of substantive certification from a six-year to a ten-year period, and expressly instructed COAH to "establish procedures for a realistic opportunity review at the midpoint of the certification period and [to] provide for notice to the public." N.J.S.A. 52:27D-313, as amended by L. 2001, c. 435. COAH is now expressly required to conduct "a realistic opportunity review" in the interim, at the midpoint of the now longer period for substantive certification, an interval long since exceeded by COAH's delay in promulgating its third-round methodology.
The FHA as amended contains no definition of "a realistic opportunity review." The term "realistic opportunity" was first used in this connection in Mount Laurel II, supra, 92 N.J. at 198, 456 A.2d 390, where the Court declared that Mount Laurel I had established the doctrine requiring that municipalities' land use regulations provide "a realistic opportunity" for low- and moderate-income housing, not litigation. There, the Court defined "realistic opportunity" to mean that "there is in fact a likelihoodto the extent economic conditions allowthat the lower income housing will actually be constructed." Id. at 222, 456 A.2d 390.
Moreover, although appellants and the public may file a scarce-resources objection at any time, N.J.A.C. 5:91-10.1 also authorizes COAH "[a]t any time, upon its own determination ... [to] issue such orders as may be necessary to require that a *606 participating municipality take appropriate measures to preserve scarce resources[.]" (Emphasis supplied.) Thus, regardless of any formally filed objection, COAH is empowered to undertake its own review process.
In In re Petition for Substantive Certification, Township of Southampton, supra, 338 N.J.Super. at 114, 768 A.2d 233, we held that COAH was required to conduct its own independent evaluation of a municipality's compliance plan when granting substantive certification. We required COAH to consider all information about a property, such as scarce resources and lack of sewer and water service, even though that information was submitted by a party that did not file timely objection. "COAH has a responsibility to do more than simply conduct a paper review of a municipality's submission in support of a petition for certification." Ibid.
It follows, as a matter of procedural regularity, i.e. fairness to the process and all who have an interest in it, that COAH bears the responsibility to employ a mechanism measurably more evaluative than a ministerial effort when considering extensions of substantive certification. And, while the process required may not need to have all the earmarks of a full review pursuant to adopted and extant standards for the then current phase, it must be conducted in a way that is more than perfunctory, with appropriate notice to "all interested parties" and an opportunity to be heard.
Even before the amendment to the FHA effected in L. 2001, c. 435 and our decision in Southampton, the FHA could be read to expect that some sort of "a realistic opportunity review" would occur in the interim between periods of substantive certification. COAH's own past practices recognizing the importance of such a review are, themselves, significant. See generally New Jersey Educ. Ass'n v. Board of Trustees, P.E.R.S., 327 N.J.Super. 326, 333, 743 A.2d 353 (App.Div.2000)("in appropriate circumstances the long-standing practice of an agency without interference by the Legislature may be persuasive evidence of its conformity with legislative intent"). In its past versions of interim procedures relating to extension of expiring substantive certifications, COAH required considerably more extensive review than the current regulation provides. In its 1992 version of subchapter 14, promulgated while COAH was drafting its proposed second-round substantive rules, the agency was obliged to review whether the municipality requesting an extension had complied with the terms of its original certification. See 24 N.J.R. 4356. Specifically, N.J.A.C. 5:91-14.1 (1992) stated, in part:
(a) Any municipality that has received a substantive certification that expires prior to July 1, 1993 may file a motion, in accordance with N.J.A.C. 5:91-12 [motions], with the Council for interim substantive certification to be effective through July 1, 1993.... [A]ny such motion shall include the municipality's housing element and fair share plan and a discussion of how the municipality has complied with the terms of its substantive certification, as well as any other additional information the Council may require....
(b) Upon motion from any such municipality, the Council will issue an interim substantive certification if the Council finds that the municipality has complied with the terms of its original substantive certification. In issuing interim substantive certification, the Council may impose any conditions it deems appropriate or necessary in order to insure continued compliance with the substantive certification and satisfaction of the fair share obligation, *607 including, but not limited to, requiring the municipality to leave all ordinances implementing its original substantive certification in effect for the interim substantive certification period.
[24 N.J.R. 4356.]
And, again, in its 1993 version of subchapter 14, promulgated while COAH was still reviewing the comments to its proposed and then reproposed second-round substantive rules, COAH required a municipality that was requesting an extension to include with its motion, among other things, "[a] statement as to the progress of the municipality's compliance" with the terms of the original substantive certification. 25 N.J.R. 3754; N.J.A.C. 5:91-14.1 (1993). If there were no objections, COAH granted the request. Objectors were required to set out how the municipality had failed to comply with its terms of substantive certification. See 25 N.J.R. 3754; N.J.A.C. 5:91-14.1 (1993). COAH was to condition its grant of an extension with any requirements necessary to insure continued compliance with the terms of the original substantive certification and the satisfaction of the municipal fair share obligation. 25 N.J.R. 3754; N.J.A.C. 5:91-14.1 (1993).
"Such long-standing practice may, in some cases, be more determinative of legislative intent than the agency's recent, conflicting interpretation." Last Chance Dev. P'ship v. Kean, 119 N.J. 425, 434, 575 A.2d 427 (1990). It seems clear that COAH has always been aware of the Legislature's intent that it provide, at the very least, some sort of "a realistic opportunity review" before taking any action. It seems obvious that a requirement for notice to interested parties with an opportunity, at the very least, to raise objections, is integral to the conduct of such a review on a principled basis.
Thus, we conclude that the review process in N.J.A.C. 5:91-14 lacks proper standards and procedures required under law and is, therefore, invalid as promulgated.

VII
Withdrawal of all the extended certifications involved in these appeals would, indeed, be chaotic and would disserve the constitutional and public-benefit policies of the FHA and the cases informed by Mount Laurel principles. We have determined that COAH has the authority to grant extended certifications, but that it has implemented that authority in a way that does not comport with the Legislature's expectations as expressed in the FHA. We reject appellants arguments that they are entitled to a particular type of procedure as a matter of due process guarantee or the policies underlying the Administrative Procedure Act.
The flaw we have identified, i.e., the lack of notice, opportunity for comment and a proper review, must be remedied in a prompt and workable manner by procedural mechanisms selected by the agency as "most suitable to achieving [its] regulatory aims," Crema v. Dept. of Envtl. Prot., 94 N.J. 286, 299, 463 A.2d 910 (1983). The "courts are ill-equipped to micromanage an agency's activities[,]" Sod Farm Assocs., supra, 366 N.J.Super. at 130 n. 10, 840 A.2d 885, even where there has been an absence of required agency action over an extended period, except in the most exigent of circumstances. See, e.g., In re March 22, 2002 Motion, supra, 371 N.J.Super. at 185-88, 852 A.2d 258; In re Failure by the Department of Banking and Insurance to Transmit A Proposed Dental Fee Schedule to the OAL for Publication in the New Jersey Register, 336 N.J.Super. 253, 268-69, 764 A.2d 494 (App. Div.2001).
It is best that COAH should determine, in the first instance, what particular showings *608 will be expected from municipalities seeking extended certification; how a true notice requirement should be effected; and how the opportunity for involvement shall be accomplished, whether by comment or more plenary participation. The key is that the standards and procedures adopted must be framed in the context of COAH's statutory obligation to engage in a principled review of each municipality's compliance and conduct before it can qualify for an extended certification. This must be done by the adoption of an appropriate rule, effective no later than sixty days from the date of this opinion, to cover the grant of extended certifications until such time as the standards for third-round methodology are effective and applied. See In re Failure of COAH, supra, 180 N.J. 148, 849 A.2d 182.

VIII
Accordingly, subject to the rule modifications to be adopted as ordered herein, and prompt application of those modified procedures, the extended substantive certifications that COAH has already granted pursuant to N.J.A.C. 5:91-14.3 are temporarily suspended, and none that are pending should be acted upon. No exclusionary zoning civil actions against the municipalities involved, that are normally precluded by substantive certification, may be filed in the interim. The continued absence, for an unreasonable time, of a timely, valid and sufficiently comprehensive interim extension procedure, and COAH's action thereon, will, of course, free interested parties from the constraints that substantive certification imposes.
The matters are remanded to COAH. We do not retain jurisdiction.
NOTES
[1] Southern Burlington Cty. N.A.A.C.P. v. Tp. of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) ("Mount Laurel II"); S. Burlington Cty. N.A.A.C.P. v. Tp. of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) ("Mount Laurel I").
[2] "`Prospective need' means a projection of housing needs based on development and growth which is reasonably likely to occur in a region or municipality, as the case may be, as a result of actual determination of public and private entities." N.J.S.A. 52:27D-304(j).
[3] A "builder's remedy" is "a court imposed remedy for a litigant who is an individual or a profit-making entity in which the court requires a municipality to utilize zoning techniques such as mandatory set-asides or density bonuses which provide for the economic viability of a residential development by including housing which is not for low and moderate income households." N.J.S.A. 52:27D-328.